ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| PEDRO ALBERTO MARTÍNEZ VELÁZQUEZ<br><br>Parte Apelada<br><br>v.<br><br>ENEIDA MONTALVO TORRES<br><br>Parte Apelante | KLAN202400478 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Sebastián<br><br>Civil Núm.: SS2020CV00463<br><br>Sobre: Acción de Deslinde |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de noviembre de 2024.

Comparece la parte apelante, Sra. Eneida Montalvo Torres (Sra. Montalvo o parte apelante), y solicita que revoquemos la Sentencia emitida el 6 de marzo de 2024, notificada el 13 de igual mes y fecha, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI). Mediante el referido dictamen, el foro primario determinó que la servidumbre de paso constituida por las partes mediante escritura pública fue voluntaria y válida, por lo que se rige conforme lo dispuesto en el Código Civil de Puerto Rico.[1] También, el foro apelado ordenó a las partes a respetar los puntos de colindancia de la servidumbre y los que delimitan el acceso al solar perteneciente al señor Martínez Velázquez, conforme fueron establecidos por el Perito Agrimensor.

Evaluado el recurso presentado, así como el alegato en oposición de la parte apelada, confirmamos el dictamen apelado.

---

[1] Hacemos referencia al Código Civil de Puerto Rico de 1930, por los hechos haber ocurrido en la vigencia de este.

**I.**

El 29 de octubre de 2020, el Sr. Pedro Alberto Martínez Velázquez (Sr. Martínez o parte apelada) presentó una demanda[2] sobre deslinde en contra de la Sra. Montalvo. En síntesis, alegó que las partes estuvieron casadas entre sí y que el matrimonio quedó disuelto mediante sentencia de divorcio.[3] Añadió que, el 6 de septiembre de 2019, las partes otorgaron la Escritura Número 55 de Liquidación de Bienes Gananciales (Escritura 55) ante el Notario Ramón Edwin Colón Pratts en la que las partes establecieron la adjudicación de tres (3) fincas que les pertenecían en común proindiviso.

Las siguientes fincas se adjudicaron a favor de la Sra. Montalvo:

PROPIEDAD UNO

**RÚSTICA:** Sita en el barrio Pozas del término municipal de San Sebastián, Puerto Rico denominado en el plano de inscripción SOLAR UNO con una cabida superficial de DOS MIL SETECIENTOS OCHENTA punto DIECINUEVE (2,780.19) metros cuadrados. En lindes por el NORTE, con remanente; por el SUR, con ramal de la carretera cuatrocientos noventa y siete; al ESTE, con acceso a remanente (según plano) y por el OESTE, con remanente. Contiene casa.

Inscrita en el Registro de la Propiedad, finca número 20569, Sección de San Sebastián.

Catastro número: 127-056-529-12-000.

PROPIEDAD DOS

**RÚSTICA:** Solar marcado con el número DOS en el plano de inscripción aprobado radicado en el barrio Pozas de San Sebastián, Puerto Rico, con una cabida superficial de MIL OCHOCIENTOS VEINTISÉIS (1,826) metros cuadrados; en lindes por el NORTE, con remanente de la finca principal; al SUR, con Cristino Pitre; al ESTE, con José Rivera y al OESTE, con camino de acceso al remanente.

Inscrita en el Registro de la Propiedad, finca número 21598, Sección de San Sebastián.

---

[2] Véase, Apéndice II del recurso, págs. 18-29. Junto con la demanda, el Sr. Martínez acompañó, entre otros, los siguientes documentos: Certificación Registral de Propiedad 1; Certificación Registral Propiedad 2; **Certificación Registral (Solar A) en la que consta la servidumbre de paso aquí en controversia;** Plano de Segregación realizado por el Agrimensor Jorge D. González y Plano de Situación realizado por el Agrimensor José I. Viruet Ramos. (Véase Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[3] Sentencia del 26 de febrero de 2008, civil número A DI2008-0075.

Catastro número 128-057-529-13-000.

El siguiente solar le fue adjudicado al Sr. Martínez:

PROPIEDAD TRES

RÚSTICA: SOLAR A radica en el barrio Pozas del municipio de San Sebastián, Puerto Rico, destinado como solar A según plano aprobado por ARPE y realizado por el Ingeniero Jorge D. González, con una cabida superficial de DIEZ MIL TRESCIENTOS DIECISIETE PUNTO VEINTISIETE (10,317.27) metros cuadrados; equivalentes a DOS PUNTO SEIS MIL DOSCIENTOS CINCUENTA (2,650) cuerdas de terreno; en lindes por el NORTE, con remanente y Pedro Martínez; al SUR, con Pedro Martínez y carretera ramal cuatrocientos noventa y siete; al ESTE, con la urbanización Brisas de Sonador, Pedro Martínez y Cristino Pitre y al OESTE, con remanente y Pedro Martínez.

Inscrita en el Registro de la Propiedad, Finca número 25254, Sección de San Sebastián.

Catastro número 128-056-529-11-000.

El Sr. Martínez expuso que en el Solar A ubica el negocio de siembra y venta de plantas ornamentales que le fue adjudicado en virtud de la Escritura 55 y que el mismo tiene un predio de terreno de diez (10) metros de ancho que le brinda acceso a la carretera municipal ramal 497. Añadió que, como parte de los acuerdos sobre las fincas, las partes pactaron que el Sr. Martínez daría acceso a las fincas adjudicadas a la Sra. Montalvo mediante una servidumbre de paso a perpetuidad que discurriría a través del predio de terreno de diez (10) metros. Añadió que la referida servidumbre se constituyó en la Escritura 55 donde se acordó lo siguiente:

"la referida servidumbre se ejecutará en cuanto al predio sirviente sobre y a través de *una franja de terreno*, la cual se describe así:

---Faja de terreno localizada en el Barrio Sonador de San Sebastián, Puerto Rico con un área superficial de QUINIENTOS OCHENTA Y SIETE punto SEIS SEIS UNO CINCO metros cuadrados que forma parte de la finca PROPIEDAD TRES (SOLAR A) antes descrito la cual discurre de sur a norte dentro del predio sirviente. En lindes por el norte con el predio sirviente del cual forma parte; por el **sur** con carretera municipal; por el **este** con PROPIEDAD DOS antes descrita propiedad de Eneida Montalvo Torres y por el **oeste** con PROPIEDAD UNO (SOLAR UNO) propiedad de **ENEIDA MONTALVO TORRES.** El

> ancho de la servidumbre por el lado **sur** del solar A que representa la parte norte de la servidumbre, es de cinco punto cuarenta y seis metros y por el lado **norte** de la carretera municipal, que representa el lado sur de la servidumbre, es de nueve punto cero tres metros y fue denominada en el plano original de Segregación del predio sirviente, como acceso." (Bastardillas nuestras).

El Sr. Martínez explicó que, para dejar establecida la servidumbre de paso, la Sra. Montalvo contrató al agrimensor José Viruet Ramos (Agrimensor Viruet), quien preparó un plano en el que se establecieron los puntos de la servidumbre.[4] El Sr. Martínez afirmó que estuvo de acuerdo con el plano realizado. También indicó que, el 24 de julio de 2019 las partes aprobaron el plano y que firmaron el mismo como signo de aceptación y acuerdo. El Sr. Martínez manifestó que las partes acordaron que el plano serviría como documento en caso de que surgiera alguna controversia en cuanto a la servidumbre de paso, siempre que este se ajustara a los puntos originales que demarcaron la finca sirviente y las dos fincas dominantes. Además, que las partes acordaron que no podían realizarse actos de naturaleza alguna que pudieran ocasionar roturas o desperfectos a la infraestructura de servidumbre, o que pudieran impedir su libre y completo uso y disfrute, tal y como está descrita en el plano ni que se eliminarían o variarían estructuras y construcciones existentes, si alguna.

El Sr. Martínez alegó que surgieron desacuerdos entre las partes en torno a la utilización de la servidumbre de paso. En síntesis, alegó que la Sra. Montalvo ha impedido el libre uso y disfrute de la propiedad al Sr. Martínez, que ha puesto obstáculos al libre uso y tránsito de la servidumbre, que ha anunciado realizar una obra en el terreno del Sr. Martínez y que ésta se ha excedido en el uso de la servidumbre de paso según acordada. Por ello, solicitó

---

[4] Véase, Anejo 7 de la Demanda, Entrada Núm. 1 en SUMAC.

al foro primario que declarase con lugar la demanda y ordenara a la Sra. Montalvo eliminar los obstáculos colocados, que ordenara la delimitación de la propiedad del Sr. Martínez y se le impusiera a la Sra. Montalvo el pago de costas, gastos y honorarios de abogado.

La Sra. Montalvo presentó *Contestación Enmendada a Demanda.*[5] En lo aquí pertinente, alegó que el Sr. Martínez pretende, para su beneficio, utilizar los puntos de colindancia del camino de entrada y no los puntos que se establecieron en el plano aprobado por las partes, lo cual afectaría la cabida de las propiedades de la Sra. Montalvo. Arguyó que la Escritura 55 establece los puntos, el largo y ancho y que esta alteró el camino (acceso) anterior, que parte de ese terreno pasó a ser de su propiedad y que el Sr. Martínez pretende continuar utilizándolo para su beneficio contrario a lo acordado en la Escritura 55.

Por otra parte, la Sra. Montalvo presentó *Reconvención por Sentencia Declaratoria.*[6] En esta, la Sra. Montalvo alegó que las partes no han establecido la servidumbre de paso conforme al plano realizado por el Agrimensor Viruet. Añadió que el Sr. Martínez estacionaba los camiones de su negocio en la servidumbre de paso lo que le impide el libre acceso a su propiedad. Que los ruidos provocados por la carga de mercancía a los camiones le han impedido descanso y le han limitado el acceso a la propiedad. Añadió que el Sr. Martínez tenía un tanque instalado en la servidumbre el cual, en conjunto con los camiones, limitaban la entrada de la Sra. Montalvo al Solar 2. Por ello, solicitó al TPI que declarase que existe una servidumbre válida, que se designara un agrimensor pagado por las partes para que prepare un informe en el que se establezcan los puntos, el largo y ancho de la servidumbre conforme la Escritura 55. Solicitó, además, que dicha servidumbre se

---

[5] *Íd.,* págs. 36-41.
[6] Apéndice del recurso, págs. 30-33.

mantenga libre y que no pueda ser utilizada como área de estacionamiento por ninguna de las partes y como área de negocio para cargar o descargar mercancía o para guardar o almacenar camiones o ningún tipo de vehículo o animal.

El Sr. Martínez contestó la reconvención. En resumen, negó que la servidumbre no se hubiera establecido, pero aceptó que esta no se había marcado en el terreno. También negó que los camiones estacionados limitaran la entrada de la Sra. Montalvo al Solar 2. También negó que los alegados ruidos generados por la carga de mercancía le impidieran el libre acceso a la Sra. Montalvo. Añadió que el tanque que se encuentra en la servidumbre lleva varios años instalado y que en la Escritura 55 se acordó que las partes no eliminarían o variarían estructuras y construcciones existentes– asunto que la propia Sra. Montalvo destacó en su reconvención. Como defensas afirmativas, el Sr. Martínez adujo que, conforme el establece el código civil, le corresponde a la Sra. Montalvo asumir los gastos para establecer y/o conservar la servidumbre. Por último, el Sr. Martínez arguyó que el remedio solicitado por la Sra. Montalvo para que se ordene que la servidumbre no pueda utilizarse como área de estacionamiento es improcedente en derecho, pues el estacionamiento de los camiones no menoscaba el uso de la servidumbre a los predios dominantes.

Luego de varios trámites procesales, el 30 de noviembre de 2021, el TPI emitió *Resolución y Orden*[7] en la que designó al Agrimensor Carlos Medina (en adelante Perito Agrimensor) como perito del tribunal para que evaluara los planos, la demanda y la contestación a demanda con el fin de determinar y marcar la servidumbre conforme lo establecido entre las partes, "así como

---

[7] Véase, Entrada Núm. 33 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

también el acceso al Solar A". El TPI precisó que el informe rendido por el Perito Agrimensor sería vinculante entre las partes.[8]

El 13 de mayo de 2022, el Perito Agrimensor rindió el correspondiente informe.[9] En lo aquí pertinente, este observó que el plano del Agrimensor Viruet ilustraba un (1) solo acceso diseñado en virtud del acuerdo entre las partes "con un ancho que varía de 9.02 metros en la parte sur y finalizando en el norte con 5.46 metros." Detalló que en dicho plano "se omitió o no se tomó en cuenta la porción de terreno que existe y se localiza entre el Solar 1 y el acceso establecido."[10]

A la luz de los documentos analizados, el Perito Agrimensor detalló las siguientes observaciones:

1. De los documentos oficiales de la Administración de Reglamentos y Permisos (Resoluciones y Planos Aprobados) se desprende que por omisión el Solar 2 no cuenta con un acceso aprobado por dicha agencia.

2. El camino existente se encuentran (sic) dentro de la faja de diez (10) metros de ancho propiedad del (Solar A).

3. En el plano de[l] agrimensor José E. Viruet ("Exhibit 1) no muestra en la parte norte del acceso la planta eléctrica y muro que ubican dentro de la misma.

4. La parte sur y entrada del acceso establecida por el agrimensor José I. Viruet ("Exhibit 1") no incluyó como parte del acceso el área ocupada por la verja y parte de una estructura existente.

5. La colindancia este del (Solar 2 y A) y la colindancia del Solar 2 están establecidas y compartidas con terrenos privados. Las dem[á]s colindancias se establecieron en

---

[8] En la resolución y orden, el TPI consignó que, una vez rendido el informe pericial, las partes tendrían diez (10) días para presentar sus objeciones y que, de no haber objeción, el tribunal ordenaría se marque la servidumbre y acceso al Solar A.

[9] Véase, Apéndice del recurso, págs. 73-91. Para rendir su informe el Perito Agrimensor consideró los siguientes documentos: (1) Plano de Situación preparado por el Agrimensor José I. Viruet del 24 de julio de 2019; **(2) Plano de segregación de los Solares 1 y 2 preparado por el Agrimensor Jorge D. González (Agrimensor González) de abril 1995; (3) Plano de Segregación del (Solar A) preparado por el Agrimensor Jorge D. González mayo 2003;** (4) Escritura Núm. 55 de Liquidación de bienes Gananciales preparada por el Notario Ramón Edwin Colón Pratts; (5) Demanda sobre acción civil del 26 de octubre de 2020; (6) Resoluciones de Aprobación de Lotificación de la Administración de Reglamentos y Permisos (A.R.P.E.) y Planos Aprobados y (7) Plano de situación de servidumbre preparado por el Agrimensor Carlos R. Medina con fecha de 3 de mayo de 2022.

[10] Resulta menester señalar que, en el Plano de Situación realizado por el Perito Agrimensor, este consignó en sus notas lo siguiente: 6. El plano muestra la servidumbre de paso establecida por acuerdo y la porción de terreno no utilizada o no incluida por esta servidumbre en una faja de terreno de diez (10) metros de ancho parte del (Solar A). Véase página 71, Apéndice del recurso.

terrenos que eran parte de la finca principal o remanente de la cual se segregan estos solares.

En vista de dichas observaciones, el Perito Agrimensor concluyó que el plano del Agrimensor Viruet no consideraba adecuadamente los planos de segregación aprobados por las agencias correspondientes e inscritos en el Registro de la Propiedad. Consignó que el acuerdo de las partes no contó con la evaluación ni aprobación de las agencias gubernamentales concernidas para su posterior inscripción en el Registro[11], lo cual podría afectar áreas y configuraciones de los solares aprobados e inscritos en los planos de segregación. Por ello, recomendó que se evaluaran nuevamente.

El Perito Agrimensor añadió que el plano tampoco consideró la configuración geométrica de los Solares 1 y 2, ni el diseño del acceso conforme aprobado en los planos de segregación. Además, destacó que el acceso establecido en el plano establece un ancho variado y menor de diez (10) metros. También destacó que, antes que se constituyera la servidumbre, el Solar 2 no contaba con un "aparente acceso legal" y que, de las resoluciones y planos aprobados, no se desprende información que indique algún acceso a dicho solar, por lo que entendió que este se encontraba enclavado. No obstante, coincidió con el Agrimensor Viruet en que el acceso acordado entre las partes invade una porción de terreno en la esquina sureste del Solar 1 y que el acceso colinda totalmente al este con el Solar 2. Por ello, el Perito Agrimensor recomendó que se eliminara la servidumbre de paso acordada por una nueva que comprenda los diez (10) metros de ancho, para que así los planos aprobados y las inscripciones en el Registro se mantuvieran inalterados y conforme con los planos de segregación del Agrimensor González.

---

[11] Véase Certificación Registral del 20 de octubre de 2020, Apéndice del recurso, págs. 26-27 en la que surge la descripción de la finca y la servidumbre acordada por las partes.

Ambas partes presentaron sus objeciones al informe. En resumen, el Sr. Martínez expuso que el Perito Agrimensor emitió una recomendación que no era conforme con las labores encomendadas por el TPI. También solicitó que se marcara sobre el terreno la servidumbre de paso, así como el acceso de su propiedad y se eliminara del informe la recomendación emitida por el Perito Agrimensor. [12]

Por su parte, la Sra. Montalvo objetó un punto de colindancia que el Perito Agrimensor marcó en el área noroeste del Solar 1, el cual entiende no es el correcto. Arguyó que el punto correcto está identificado por un poste de madera cortado que establece la colindancia entre un predio colindante y el Solar 1. Destacó que dicho poste fue el punto de colindancia que el Agrimensor Viruet utilizó para realizar el plano y establecer la servidumbre acordada por las partes. Además, reconoció que la fijación de dicho punto tuvo el efecto que en el lado norte la servidumbre sería menor de diez (10) metros, efecto que ambas partes estuvieron de acuerdo e impartieron su aprobación al firmar el plano y la Escritura 55. Enfatizó que ella sería la única parte afectada en cuanto a la disminución de la cabida, pero que estaba conforme y por ello firmó el plano y las escrituras. [13] El TPI señaló vista para la discusión del informe pericial.

Celebrada la vista, el TPI, luego de escuchar a las partes, señaló una vista de inspección ocular, la cual se llevó a cabo el 21 de noviembre de 2022. A esta, comparecieron las partes y sus abogados. Conforme surge del acta de la inspección[14], la controversia entre las partes trataba sobre un (1) solo punto

---

[12] Véase, *Moción Informativa, Posición en Cuanto a la Recomendación del Perito y Solicitud de Orden para Marcar sobre el Terreno* (Entrada núm. 53 SUMAC.)

[13] Véase, *Moción en Cumplimiento de Orden,* Entrada Núm. 55 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[14] Véase, Entrada Núm. 61 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

relacionado a la servidumbre. Luego de escuchar a las partes, el TPI les concedió un término para informar si lograban llegar a un acuerdo.

Luego de numerosos y extensos trámites innecesarios pormenorizar, el 10 de enero de 2024, el Sr. Martínez presentó una moción informativa.[15] En esta, informó que el 19 de diciembre de 2023, las partes y el Perito Agrimensor acudieron a las fincas en controversia y se marcaron los puntos correspondientes al acceso de diez (10) metros. Indicó que las partes quedaron complacidos con la delimitación del acceso del Solar A y que quedaba pendiente la demarcación de la servidumbre de paso, la cual se llevaría a cabo en o antes del 15 de enero de 2024. Por su parte, el 22 de enero de 2024, la Sra. Montalvo presentó también una moción informativa en la que expresó que el 19 de diciembre de 2023, las partes junto con sus abogados y el Perito Agrimensor, acudieron al área en controversia y que luego de marcados los puntos, las partes aceptaron los puntos según marcados por el Perito Agrimensor. Añadió que el 22 de enero de 2024, el Perito Agrimensor fue al terreno y mediante GPS marcó las líneas por donde discurriría la servidumbre. Por ello arguyó que solo restaba que el perito certificara al TPI que marcó la servidumbre conforme ordenado y solicitó que una vez sometido el plano, el TPI dispusiera del caso conforme el acuerdo de que el informe sería vinculante entre las partes.

Por otro lado, el 24 de enero de 2024, el Sr. Martínez presentó *Moción en Reacción a Moción Informativa sobre Demarcación de la Servidumbre de Paso y Solicitud para que se Dicte Sentencia.*[16] Expuso que el 22 de enero de 2024, el Perito Agrimensor acudió a

---

[15] Véase, *Moción Informativa, Solicitud para que se Deje sin efecto Sanciones y Solicitud de Sentencia Parcial,* entrada núm. 82 de SUMAC.
[16] Entrada núm. 87 de SUMAC.

las fincas objeto del pleito y marcó los puntos de la servidumbre que discurre sobre el acceso al Solar A. Añadió que un empleado suyo y la Sra. Montalvo estuvieron presentes en el lugar. Por ello, solicitó al tribunal que dictara sentencia.

El 26 de febrero de 2024, la Sra. Montalvo presentó *Moción en Cumplimiento de Orden*[17]. En lo aquí pertinente, argumentó que, según expuesto por el Perito Agrimensor, "existe un camino y que sobre este hay una servidumbre de paso (aparenta (sic) más pequeña que el acceso y por eso puso los puntos adicionales)." Dicho de otro modo, que el camino (acceso) según los puntos marcados es más grande que la servidumbre. Arguyó que el TPI no ordenó que se identificara el acceso al Solar A, sino establecer los puntos de la servidumbre. No obstante, reiteró estar de acuerdo con los puntos que marcó el Perito Agrimensor por donde discurre la servidumbre de paso por ser similares a los establecidos por el Agrimensor Viruet en el plano que aprobaron las partes.

El 6 de marzo 2024 y notificada el 13 de marzo de 2024, el TPI emitió la sentencia apelada. En esta, formuló las siguientes determinaciones de hechos:

1. Las partes del epígrafe estuvieron casadas, se divorciaron el 26 de febrero de 2008, mediante sentencia en el caso civil número ADI 2008-0075 (sic), dicha sentencia es final firme e inapelable.

2. Durante la vigencia del matrimonio adquirieron bienes inmuebles, los cuales decidieron dividir y el 6 de septiembre de 2019 otorgaron la escritura Número 55 ante el notario Lcdo. Ramón Edwin Colon Pratts sobre liquidación de bienes gananciales.

3. En dicha escritura Núm. 55 se le adjudicó a la demandada las siguientes propiedades:

   a. Solar uno, sita en el barrio Pozas del término municipal de San Sebastián, Puerto Rico denominado en el plano de inscripción SOLAR UNO con cabida superficial de 2,789.19 metros cuadrados. Descrito en el inciso 6 de la demanda y en la escritura 55, págs. 1-2.
   b. Rústica solar marcado con el número Dos en el plano de inscripción aprobado radicado en el barrio Pozas

---

[17] Entrada Núm. 95 de SUMAC.

de San Sebastián con una cabida superficial 1,826 metros cuadrados. Descrito en el inciso 6 de la demanda y en la escritura 55, pág. 2.

4. En dicha escritura Núm. 55 se le adjudicó al demandante la siguiente propiedad:

   a. Solar A: solar radicado en el barrio Pozas del municipio de San Sebastián, Puerto Rico destinado como solar A según el plano aprobado por ARPE y realizado por el ingeniero Jorge D. González con una cabida superficial de 10, 317.26 metros cuadrados. Descrito en el inciso 6 de la demanda y en la escritura 55, pág. 3.

5. Ese mismo día el demandante, mediante la escritura Número 55, que se hace referencia en el inciso 5 de la deman[da], constituyó servidumbre de paso sobre la finca descrita como propiedad tres en la demanda la cual le pertenece al demandante y a favor de las fincas descritas en la demanda como propiedad uno y propiedad dos, propiedades pertenecientes a la demandada, haciendo constar que la referida servidumbre se ejecutará en cuanto al predio sirviente sobre y a través de una franja de terreno la cual, se describe así:

   "Faja de terreno localizada en el barrio Sonador de San Sebastián Puerto Rico con un área superficial de quinientos ochenta y siete punto seis seis uno cinco metros cuadrados que forma parte de la finca propiedad Tres (Solar A) antes descrito la cual discurre de sur a norte dentro del predio sirviente. En lindes por el norte con el predio sirviente del cual forma parte; por el sur con carretera municipal; por el este con propiedad dos antes descrita propiedad de Eneida Montalvo Torres y por el oeste con propiedad uno (solar uno) propiedad de Eneida Montalvo Torres **El ancho de la servidumbre por el lado sur del solar A que representa la parte norte de la servidumbre, es de cinco punto cuarenta y seis metros y por el lado norte de la carretera municipal, que representa el lado sur de la servidumbre, es de nueve punto tres metros y fue denominada en el plano original de segregación del predio sirviente, como acceso."**

6. En la escritura Número 55, clausula 8 (c), las partes manifiestan que examinaron el plano que describe en detalle la servidumbre de paso siendo su localización, curso, ancho y largo según surge de éste, el cual fue firmado el 29 de julio de 2019 por el agrimensor José I. Viruet Ramos. **Los comparecientes declaran que han suscrito el plano y que será éste el que servirá de documento en caso de que exista alguna controversia en cuanto a la servidumbre siempre que se ajuste a los puntos originales que demarcaron la finca sirviente y las dos dominantes.**

7. En la escritura Número 55 clausula 8 (d), acordaron las partes que no podrán realizar actos de naturaleza alguna que puedan ocasionar roturas o desperfectos a la infraestructura de la servidumbre, o que pueda impedir su libre y completo uso y disfrute, tal y como está descrita en el plano antes referido ni que se eliminarán o variarán estructuras y construcciones existentes, si alguna.

8. Desde que se otorgó la escritura, las partes no han establecido sobre el terreno la servidumbre de paso conforme el plano realizado por el agrimensor Viruet Ramos a petición de las partes y aceptado por éstos en la escritura Número 55, otorgada por el notario Ramón Edwin Colon Pratts y firmado por ambos.

9. **En el caso de autos, no hay controversia que existe una servidumbre de paso creada mediante escritura pública y que hay un plano que establece los puntos, el largo y el ancho, ambas partes lo manifiestan en sus respectivos escritos.**

10. El 30 de noviembre de 2021, emitimos Resolución y Orden donde se designó al agrimensor Carlos Medina como perito del tribunal para que realizara el siguiente trabajo pericial: Evalué los planos, la demanda y la contestación a la demanda para que determine y marque la servidumbre conforme lo establecido entre las partes, así como también el acceso al solar "A".

11. Una vez realizado dicho informe, el cual sería vinculante entre las partes, el Tribunal dictará sentencia.

12. El perito agrimensor Carlos Medina fue a la finca y en presencia de las partes, marcó la servidumbre de paso para los solares 1, 2 y el acceso al solar "A".

13. Que todas las partes estuvieron de acuerdo. (Énfasis nuestro)

En virtud de las anteriores determinaciones, el TPI concluyó que la constitución de la servidumbre de paso era válida y dispuso que los puntos establecidos por el Perito Agrimensor deberán respetados por ambas partes, tanto los que determinan la servidumbre como los que determinan el acceso al Solar A del Sr. Martínez. Además, el foro *a quo* resolvió que la servidumbre constituida en la Escritura 55 se regirá por lo dispuesto en el Código Civil de Puerto Rico– esto es, que se entienden concedidos todos los derechos necesarios para su uso y que el titular sirviente asume todas las obligaciones inherentes a su relación con la finca gravada y que la servidumbre deberá ejercerse del modo más adecuado a fin de obtener la utilidad para el titular dominante y, a su vez, del modo menos incómodo y lesivo para el titular sirviente.

El 22 de marzo de 2024, la Sra. Montalvo presentó *Moción en Reconsideración de Sentencia.[18]* En resumen, solicitó se reconsiderara la sentencia a los efectos de ordenar que la servidumbre prevaleciera tal como fue establecida en el plano del Agrimensor Viruet y el Agrimensor Medina, que se descarte el acceso al Solar A nombrado por el Agrimensor Medina, por éste no constar en el plano original del Agrimensor Viruet y que se ordene que la servidumbre no sea utilizada en ningún momento como área de estacionamiento para los camiones del negocio del Sr. Martínez y sus clientes. El 15 de abril y notificada en igual fecha, el TPI denegó la solicitud de reconsideración de la Sra. Montalvo.

Inconforme, la Sra. Montalvo acude ante nos y le imputa al foro primario la comisión de los siguientes señalamientos de error:

1. Erró el TPI al ignorar y descartar el claro acuerdo entre las partes plasmado en el párrafo noveno de la Escritura 55, sobre "Liquidación de Bienes Gananciales" otorgada ante el notario Ramón Edwin Colón Pratts el 6 de septiembre de 2019 establece que "Los comparecientes declaran que han suscrito el plano y que será este el que servirá de documento en caso de que exista alguna controversia en cuanto a la servidumbre siempre que est[a] se ajuste a los puntos originales que demarcaron la finca sirviente y las dos dominantes". (Apéndice V, pág. 31).

2. Erró el TPI al considerar un asunto no justiciable ya que el demandante mediante esta acción legal impugnó una decisión suya, tomada libre y voluntariamente de establecer la servidumbre según descrita en la Escritura 55.

3. Erró el TPI al considerar y tratar dos planos con contenidos diferentes como si se tratase del que fue acordado por las partes emitiendo una sentencia contradictoria.

4. Erró el TPI al añadir a la servidumbre con una porción de franja de terreno no incluido en ésta, de la que se ha adueñado el demandante porque facilita la entrada a los camiones, y tratarlo como si hubiese sido parte de ella.

5. Erró el TPI al recibir y validar el Plano presentado por el Agrimensor Carlos Medina que reduce la cabida de la propiedad de la demandada al ampliar y desviar la servidumbre de paso según establecido por el Agrimensor José I. Viruet, y que las partes habían acordado que no se alteraría.

---

[18] Entrada 110 de SUMAC.

6. Erró el TPI al no resolver que la servidumbre de paso no puede ser dedicada al uso no autorizado de estacionamiento para los camiones que pertenecen al negocio del demandante apelado, sus empleados, clientes y personas que lo visitan. El demandante apelado no mueve los camiones bloqueando el paso por largos periodos de tiempo o de hacerlo regresa al mismo lugar dónde estaban estacionados en la servidumbre.

El Sr. Martínez presentó su *Oposición al Recurso de Apelación.* En resumen, sostiene que la sentencia apelada no es contradictoria, y que el foro apelado no descartó ni ignoró el acuerdo de las partes, pues lo que se solicitó y ordenó fue "que se estableciera sobre el terreno donde físicamente discurre [...] dicha servidumbre." Asevera que no impugnó el acuerdo suscrito en la Escritura 55, sino que solicitó que la servidumbre fuera marcada sobre el terreno y que, también se marcara el terreno de su propiedad por el cual discurre la servidumbre. El Sr. Martínez argumenta que la Sra. Montalvo no concibe que la servidumbre de paso, que discurre sobre el predio de terreno de diez (10) metros pertenecientes a él, es más estrecha que el acceso. Sostiene que el dueño del predio dominante (la Sra. Montalvo) no es el dueño de la franja de terreno marcada como servidumbre, sino que tiene el derecho de paso y que el terreno donde esta discurre sigue siendo propiedad del titular del predio sirviente (el Sr. Martínez). Arguye que nunca ha bloqueado el acceso a la Sra. Montalvo y que esta, según expuesto en su recurso, solo cuenta con un vehículo pequeño para su uso personal, por lo cual la servidumbre, según pactada por las partes y así marcada, provee un ancho suficiente para que esta pueda pasar. Por último, señaló que el TPI emitió su decisión basándose en el informe pericial presentado por el Perito Agrimensor, el cual es vinculante, por lo que no existe razón o fundamento para que el dictamen apelado sea modificado o revocado.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

**II.**

**A.**

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Arguello v. Arguello*, 155 DPR 62 (2001); *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011); *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219, (2021).

Nuestro Máximo Foro ha reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Pueblo v. Pérez Núñez*, supra; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillados de Puerto Rico*, supra, pág. 356.

Por ello, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad **o las determinaciones de hecho formuladas por el Tribunal de Primera Instancia.** *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219. (Negritas nuestras). Ahora bien, cuando las

conclusiones de hechos se fundamentan en prueba documental o pericial, es norma establecida que el tribunal sentenciador se encuentra en igual posición que el tribunal sentenciador para evaluarla. Así, el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta. Todo, con el fin de proveer el justo valor probatorio. *Íd.*

**B.**

Como es sabido, los tribunales solo podremos resolver aquellos casos que sean justiciables. *Hernández Montañez v. Pares Alicea*, 2022 TSPR 14 (2022); *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011). La doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de estos. Dicha doctrina nace del principio elemental de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. Esto es, para el ejercicio válido del poder judicial se requiere la existencia de un caso o controversia real. *Smyth, Puig v. Oriental Bank*, 170 DPR 73, 75 (2007); *Hernández Montañez v. Pares Alicea*, supra; *Bhatia Gautier v. Gobernador*, supra, pág. 68. Según ha resuelto nuestro más Alto Foro, una controversia abstracta, ausente un perjuicio o amenaza real y vigente a los derechos de la parte que los reclama, no presenta el caso y controversia que la Constitución exige para que los tribunales puedan intervenir. *Muns. Aguada y Aguadilla v. JCA*, 190 DPR 122, 132 (2014); Lozada *Sánchez et al v. JCA*, supra, págs. 916-917; *Moreno v. Pres. U.P.R. II*, 178 DPR 969, 973 (2010). Según lo dispuesto por nuestro Máximo Foro, una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las

partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no está maduro. (*Énfasis nuestro*) *Super Asphalt v. AFI y otros*, 206 DPR 803 (2021); *Bhatia Gautier v. Gobernador*, supra, págs. 68-69.

## C.

De conformidad con el derogado Código Civil de 1930, aplicable a los hechos del presente caso, toda obligación consiste en dar, hacer o no hacer alguna cosa. Art. 1041 del Código Civil.[19] Las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia.[20] Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos.[21]

Un contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.[22] Los requisitos para la validez de un contrato son: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato; y (3) causa de la obligación que se establezca.[23]

En los contratos, las partes pueden establecer los pactos, cláusulas y condiciones que consideren convenientes siempre que éstas no sean contrarias a la ley, la moral y al orden público.[24] Si un contrato es contrario a la ley o a la moral, o lesiona un interés general del ordenamiento jurídico, carece de causa.[25]

---

[19] 31 LPRA ant. sec. 2991.
[20] Art. 1042 del Código Civil, 31 LPRA ant. sec. 2992.
[21] Art. 1044 del Código Civil, 31 LPRA ant. sec. 2994.
[22] Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371.
[23] Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391; Véase, además: *Quest Diagnostic v. Mun. San Juan*, 175 DPR 994 (2009); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870 (2008); *Bosques v. Echevarría*, 162 DPR 830 (2004).
[24] Art. 1207 del Código Civil, 31 LPRA ant. 3372.
[25] Véase, Art. 1227 del Código Civil, 31 LPRA ant. 3432.

Por otro lado, "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas". Artículo 1233 del Código Civil de 1930, *supra*, sec. 3471; *Rodríguez García v. UCA, supra*, pág. 944; *Pepsi-Cola v. Mun. Cidra*, 186 DPR 713, 752 (2012). Del mismo modo, "[s]i las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas". Artículo 1233 del Código Civil de 1930, *supra*; *Rodríguez García v. UCA, supra*, pág. 944; *VDE Corporation v. F & R Contractors*, 180 DPR 21, 34-35 (2010). Además, para juzgar la intención de los contratantes, se deberán tomar en consideración los actos y las circunstancias previos a la otorgación del contrato que puedan indicar la voluntad de los contratantes. Artículo 1234 del Código Civil de 1930, *supra*, sec. 3472 (derogado); *Pepsi-Cola v. Mun. Cidra, supra*, pág. 752.

Por otra parte, el principio de la autonomía de la voluntad está entrelazado con el principio de la buena fe contractual. La buena fe obliga más allá de lo expresamente pactado; es decir, comprende todas las consecuencias que por la naturaleza del contrato sean conforme a la buena fe, al uso y a la ley.[26]

### D.

La servidumbre se define como un gravamen impuesto sobre un inmueble (predio sirviente) en beneficio de otro perteneciente a un dueño distinto (predio dominante). Artículo 465 del Código Civil, 31 LPRA sec. 1631; *Ciudad Real v. Municipio de Vega Baja*, 161 DPR 160 (2004); *Soc. de Gananciales v. Mun. de Aguada*, 144 DPR 114 (1997). Al amparo del Artículo 500 del Código Civil, 31 LPRA sec. 1731, "[e]l propietario de una finca o heredad enclavada entre otras ajenas y sin salida a camino público, tiene derecho a exigir

---

[26] Art. 1210 del Código Civil, 31 LPRA ant. 3375.

paso por las heredades vecinas, previa la correspondiente indemnización." El Artículo 501 dispone que la servidumbre de paso "debe darse por el punto menos perjudicial al predio sirviente, y en cuanto fuere conciliable con esta regla por donde sea menor la distancia del predio dominante al camino público. 31 LPRA § 1732. Además, y, en lo aquí pertinente, el Artículo 502 establece que el ancho de la servidumbre de paso "será la que baste a las necesidades del predio dominante." 31 LPRA § 1733.

La doctrina define el derecho de servidumbre como uno subjetivo, de carácter real y perpetuo, capaz de conceder la facultad de obtener determinado goce o utilidad proveniente de un fundo, a favor de otro ajeno. J.R. Vélez Torres, *Curso de Derecho Civil; Los bienes; Los derechos reales*, San Juan, Universidad Interamericana de Puerto Rico, Facultad de Derecho, 2005, T. II, Cap. XIV, pág. 355. El mismo constituye una limitación al derecho de propiedad, toda vez que su ejercicio restringe las libertades del titular de la finca gravada en cuanto al disfrute que, de otro modo, ostentaría sobre su inmueble. J.R. Vélez Torres, *op. cit.*, pág. 359. Estas servidumbres pueden ser continuas o discontinuas, así como aparentes o no aparentes. Artículo 468 del Código Civil, 31 LPRA sec. 1634. De otra parte, en cuanto su naturaleza, las servidumbres pueden ser legales o voluntarias. Artículo 472 del Código Civil, 31 LPRA sec. 1638.

Asimismo, el Código Civil impone ciertas restricciones a los dueños de los predios dominantes y sirvientes, en cuanto al uso de las servidumbres en general y en lo que respecta a este caso, a las servidumbres de paso. Al detallar las obligaciones del dueño del predio dominante, el Código nos dice que:

> El dueño del predio dominante podrá hacer a su costo en el predio sirviente las obras necesarias para el uso y conservación de la servidumbre, **pero sin alterarla ni hacerla más gravosa**. Deberá elegir para ello el tiempo y

la forma convenientes, **a fin de ocasionar la menor incomodidad posible al dueño del predio sirviente**.

Art. 479, 31 LPRA sec. 1671. (Énfasis nuestro.)

Añade el Profesor Vélez Torres que, dentro de las obligaciones reputadas al dueño del predio dominante, este deberá:

> (1) abstenerse de usar la servidumbre para beneficio de predios ajenos: (2) abstenerse de practicar variación alguna que pueda constituir un exceso en el uso de la servidumbre; (3) utilizar la servidumbre sólo en lo necesario para el destino y uso conveniente del predio dominante, con el menor daño del predio sirviente; (4) ejecutar y costear, en su caso, las obras necesarias para el uso y conservación de la servidumbre, sin hacerla más gravosa.

José R. Vélez Torres, *Op. cit.*, pág. 372.

El Tribunal Supremo ha destacado que, por medio de una servidumbre de paso, la titularidad sobre el derecho adquirido por el dueño del predio dominante se estima sobre la servidumbre, no así sobre el derecho al paso a través de ella. Así lo expreso el alto foro en *López Amaral v. Márquez*, 102 DPR 239 (1974), al citar a Casals Colldecarrera:

> Criterio similar al nuestro expresa Casals Colldecarrera en el Derecho Real de Servidumbre, ed. 1941, donde a la pág. 109, expresa:
>
> > **'El propietario del predio dominante no adquiere por la indemnización la propiedad del paso, sino solamente el derecho de servidumbre, que no implica expropiación, sino limitación de la propiedad**. **En virtud de esto, el dueño del predio sirviente puede seguir utilizando éste como mejor le convenga, a condición siempre de no obstaculizar el paso,** y en caso de que impidiera el ejercicio de la servidumbre, tiene el [predio] dominante acción para pedir la libertad de su vía. ¿Quiere decir esto, sigue Manresa, que la existencia de servidumbre de paso a través de una finca es obstáculo para que el dueño de ésta pueda cercar o cerar [sic] convenientemente su fundo? Evidentemente que no, puesto que cerrar un fundo es un acto de libre dominio, y el dueño del predio sirviente puede hacerlo libremente, dejando a salvo la servidumbre mediante puertas o cierres que no impidan el ejercicio de la misma.'[27]

---

[27] *López Amaral v. Márquez*, supra, 244–245 (1974). (Énfasis Nuestro).

Al citar a Federico Puig Peña, el Tribunal Supremo puntualizó lo siguiente:

'Abstenerse de menoscabar en modo alguno el uso de la servidumbre constituida. La principal obligación que tiene el dueño del predio sirviente es abstenerse de menoscabar en modo alguno el uso de la servidumbre constituida (art. 545). Esta obligación es puramente pasiva, y, por consiguiente, consiste en mantener una conducta de omisión, no haciendo lo que la servidumbre tiene por fin impedir (como en la *non edificandi, non altius tollendi*, etc.) o permitiendo, sin poner ninguna traba, al propietario del predio dominante realizar actos constitutivos de la servidumbre, como sucede, por ejemplo, en materia de servidumbre de pasto, de saca de aguas, etc. La expresión menoscabo que emplea el Código significa, no sólo realizar la acción decididamente contraria —como, por ejemplo, oponerse resueltamente al uso de una servidumbre positiva— sino también dificultar el ejercicio, como sería, por ejemplo, si se cultivara la faja de terreno de una servidumbre de paso o si se plantaran árboles que dificultaran la circulación del ganado, en una servidumbre de paso.'

*Id.*, 102 DPR, en la pág. 243-244.[28]

No obstante, el dueño del predio sirviente puede preterir la norma antes indicada en algunas circunstancias delimitadas por el propio artículo 481. En ese sentido,

[S]i por razón del lugar asignado primitivamente, o de la forma establecida para el uso de la servidumbre, llegare ésta a ser muy incómoda al dueño del predio sirviente o le privase de hacer en él obras, reparos o mejoras importantes, podrá variarse a su costa, siempre que ofrezca otro lugar o forma igualmente cómodos, y de suerte que no resulte perjuicio alguno al dueño del predio dominante o a los que tengan derecho al uso de la servidumbre.

31 LPRA sec. 1673.

Por tratarse de una servidumbre discontinua, la servidumbre de paso no es susceptible de adquirirse mediante prescripción, sólo en virtud de título, siendo la única excepción la servidumbre de signo aparente. *Soc. de Gananciales v. Secr. de Justicia*, 137 DPR 70, 78 (1994). Se trata de una servidumbre discontinua porque su uso se revela en intervalos de longevidad esporádica y su

---

[28] Se cita con aprobación a Federico Puig Peña, *II Compendio de Derecho Civil Español*, Derechos Reales 540 (3a., ed. Madrid, 1976).

aprovechamiento necesariamente requiere de actos del hombre. *Soc. de Ganaciales v. Mun. de Aguada,* supra. A ello se suma que, al amparo del Artículo 481 del Código Civil:

> [e]l dueño del predio sirviente no podrá menoscabar de modo alguno el uso de la servidumbre constituida. Sin embargo, si por razón del lugar asignado primitivamente, o de la forma establecida para el uso de la servidumbre, llegare ésta a ser muy incómoda al dueño del predio sirviente o le privase de hacer en él obras, reparos o mejoras importantes, podrá variarse a su costa, siempre que ofrezca otro lugar o forma igualmente cómodos, y de suerte que no resulte perjuicio alguno al dueño del predio dominante o a los que tengan derecho al uso de la servidumbre.
> 31 LPRA sec. 1673.

Nótese, además, que el propietario del predio dominante solo tiene un derecho de paso, no de propiedad sobre la servidumbre, lo que solamente representa una limitación al derecho de propiedad del dueño del predio sirviente. Por ello, el dueño del predio sirviente puede seguir utilizando éste como mejor le convenga, con la condición de no obstaculizar el paso. *López Amaral v. Márquez,* supra.

### III.

Por estar estrechamente relacionados, discutiremos conjuntamente el primer y segundo señalamiento de error. En síntesis, la Sra. Montalvo alega que el TPI incidió al ignorar y descartar el acuerdo pactado por las partes en la Escritura 55 de que el plano del Agrimensor Viruet serviría como documento en caso de que surgiera controversia sobre la servidumbre. Añade que la sentencia derrotó dicho acuerdo y la intención expresa de que este no podía ser alterado por ninguna de las partes. Argumenta que aun cuando la sentencia reconoce la validez del acuerdo consignado en la Escritura 55, interfiere con lo establecido en ella, pues entiende que la servidumbre de paso y el acceso al Solar A debe ser el mismo y no que, por donde discurre la servidumbre, exista un acceso distinto o con medidas diferentes que incidan uno sobre el otro

dentro de la propiedad del Sr. Martínez. Como segundo señalamiento de error, esta argumenta que el foro primario incidió al atender una controversia no justiciable pues, al presentar su demanda, el Sr. Martínez buscaba impugnar su propia decisión que tomó libre y voluntariamente al momento de acordarse la servidumbre.

Por su parte, el Sr. Martínez argumenta que no impugnó el acuerdo con la Sra. Montalvo sobre la servidumbre de paso y que esta sigue siendo la establecida en la Escritura 55. Sostiene que el foro primario no ignoró ni descartó el acuerdo suscrito en la Escritura 55, pues en la demanda instada lo que se solicitó– y el TPI eventualmente ordenó–fue que se marcara sobre el terreno dónde físicamente discurre la servidumbre acordada, así como el camino (acceso) del Solar A. Sostiene que el TPI dispuso conforme al plano preparado por el Perito Agrimensor, luego de este rendir el correspondiente informe, por lo que la sentencia apelada no es contradictoria. El Sr. Martínez tiene razón.

En la Escritura 55, las partes manifestaron que examinaron el plano que describe la servidumbre y que su localización, curso, ancho y largo son conforme indicados en este. En virtud de ello, acordaron que el plano serviría como "documento en caso de que exista alguna controversia en cuanto a la servidumbre *siempre que se ajuste a los puntos originales que demarcaron la finca sirviente y las dos dominantes"*. Al respecto, resulta importante destacar que, conforme surge del plano de segregación de los solares, el Solar A cuenta con un camino que le brinda acceso a la carretera municipal. Así pues, conforme lo acordado por las partes en la Escritura 55, el plano del Agrimensor Viruet serviría como documento siempre que se ajustara a los puntos originales de la finca sirviente y las dominantes. Ante el hecho de que en efecto surgió controversia en torno al uso de la servidumbre, el Sr. Martínez instó la demanda en

la que solicitó se demarcaran tanto los puntos por los que discurre la servidumbre, así como los que corresponden al acceso del Solar A. Mientras, en su alegación responsiva, la Sra. Montalvo alegó que la servidumbre no se estableció conforme al plano del Agrimensor Viruet. Ciertamente el foro primario no incidió al atender el pleito instado, pues en efecto surgieron controversias en torno a la servidumbre acordada por las partes. Tan es así, que aun luego del informe pericial rendido, el TPI hizo llevó a cabo una inspección ocular del área en controversia, por lo que tuvo la oportunidad de evaluar lo alegado por ambas partes. En virtud de lo anterior, el foro primario tuvo ante sí una controversia justiciable, por lo que no se cometió el segundo señalamiento de error.

Ahora bien, en su reconvención, fue la Sra. Montalvo quien solicitó al foro primario la designación de un agrimensor para que rindiera un informe que fuera vinculante para las partes y que en virtud de este se dictara sentencia, y se establecieran los puntos conforme al plano del Agrimensor Viruet y la Escritura 55. De una lectura de la Escritura 55, así como la demanda, contestación a demanda y reconvención colegimos que la contención de la Sra. Montalvo no es *per se* en torno a la demarcación de la servidumbre de paso, sino que se haya demarcado también los puntos de colindancia que conforman el camino (acceso) del Solar A del Sr. Martínez. A su entender, la demarcación de la servidumbre según establecida en la escritura 55 y el plano del Agrimensor Viruet es lo que comprende a su vez -como un todo- el acceso del Solar A del Sr. Martínez. No le asiste la razón.

De la propia Escritura 55, cláusula 9, surge que las partes pactaron que la servidumbre se ejecutaría cuanto al predio sirviente sobre y a través de una franja de terreno que forma parte del Solar A. En la descripción de la franja de terreno se establece que el ancho de la servidumbre por el lado sur del Solar A es de 5.46 metros y por

el lado norte es de 9.03 metros. Conforme surge de las alegaciones de la demanda, así como del informe del Perito Agrimensor, la franja de terreno del Solar A por donde discurre la servidumbre es de diez metros de ancho y así fue aprobado en el plano de segregación. Ciertamente la constitución de la servidumbre pactada no tuvo el efecto de alterar el acceso del Sr. Martínez, ni reducir su ancho. Tal como establece el Art. 502 del Código Civil, la anchura de la servidumbre de paso será la que baste a las necesidades del predio dominante. Conforme expuesto por el Sr. Martínez en su alegato, este no ha bloqueado el acceso a la servidumbre ni ha impedido su uso, pues la servidumbre establecida tiene un ancho de 9.02 metros, es decir, de 30.40 pies de ancho y termina con un ancho de 5.46 metros, esto es, 18.37 pies de ancho, lo cual es suficiente para que la Sra. Montalvo pueda pasar por la servidumbre en su vehículo personal. Así pues, concluimos que la demarcación de la servidumbre, así como la demarcación del acceso al Solar A no impide que la Sra. Montalvo pueda hacer libre uso de la servidumbre acordada pues el ancho de esta basta para sus necesidades según acordaron las partes en la Escritura 55 y el plano del Agrimensor Viruet. Recalcamos que, conforme resuelto por nuestro Tribunal Supremo en *López Amaral v. Márquez,* supra, la Sra. Montalvo, como propietaria del predio dominante solamente tiene un derecho de paso, no de propiedad sobre la servidumbre. Este derecho de paso es una limitación y no un impedimento al derecho de propiedad que el Sr. Martínez ostenta sobre el predio sirviente, por lo que este puede seguir utilizándolo como mejor le convenga, siempre y cuando no impida el paso. El mero hecho de que el Sr. Martínez estacione temporeramente los camiones de su negocio para la carga y descarga de mercancía, no significa que esté actuando en menoscabo de la servidumbre, siempre que al así hacerlo no

obstruya el espacio de la servidumbre y la Sra. Montalvo pueda pasar sin inconvenientes a los solares de su propiedad.

En su tercer señalamiento de error, la Sra. Montalvo alega que el foro primario incidió al considerar dos planos con contenido diferente como si se tratase del acordado por las partes. En esencia, arguye que la servidumbre de paso y el acceso contemplado en el plano "no son sinónimos", pues el acceso tiene el efecto de agrandar y extender la servidumbre de paso más allá de los puntos legalmente establecidos y que son correctos. Argumenta que el Perito Agrimensor añadió puntos adicionales lo cual crea una incongruencia e irregularidades en las medidas originales. Añadió que el Perito Agrimensor se abrogó la autoridad de establecer puntos adicionales y reubicar otros, lo cual no formó parte de las encomiendas ordenadas por el TPI. No tiene razón.

De la *Resolución y Orden* emitida el 30 de noviembre de 2021, surge que el foro *a quo* designó al Agrimensor Carlos Medina como perito del Tribunal, determinó que el informe rendido por este sería vinculante entre las partes y que estas podrían presentar sus objeciones al informe. Conforme surge de la resolución, el TPI le asignó al Perito Agrimensor las siguientes encomiendas:

1. Evaluará *los planos*, la demanda radicada por la parte demandante y la Contestación a la demanda *y marcar la servidumbre conforme lo establecido entre las partes, así como también el acceso al Solar "A".*

2. [...]

3. [...]

4. [...]

5. De no haber objeción *el Tribunal ordenará que se marque la servidumbre y el acceso al Solar "A".* (Negritas suprimidas. Bastardillas nuestras).

Una vez el Perito Agrimensor aceptó la encomienda del Tribunal, este examinó los documentos necesarios para emitir su informe y recomendaciones. Entre los documentos examinados el foro primario le encomendó evaluar los planos. Se acordó además

que el informe sería vinculante para las partes. Conforme surge de la cláusula C de la Escritura 55, las partes acordaron que el plano del Agrimensor Viruet serviría como documento en caso de controversia *siempre que se ajust[ara] a los puntos originales que demarcaron la finca sirviente y las dos dominantes.* En vista de lo anterior, resulta inescapable que, ante la controversia sobre la servidumbre, era necesario acudir tanto al plano de situación del Agrimensor Viruet (donde se constituyó la servidumbre) como a los planos de segregación preparados por el Agrimensor González (donde constan los puntos originales de la finca sirviente y las dominantes) para el Perito Agrimensor poder rendir un informe conforme las encomiendas asignadas por el foro de instancia. El hecho de que se demarcaran los puntos de la servidumbre y también los puntos del acceso del Solar A no constituye en sí una incongruencia que provoque que la sentencia del TPI sea contradictoria. No se cometió el tercer error.

Pasamos a discutir el cuarto y quinto señalamiento de error en conjunto. En esencia, la Sra. Montalvo sostiene que las colindancias según el acceso en el plano del Agrimensor Medina están establecidas incorrectamente. Que el acceso fue creado por el Agrimensor Medina y no está contemplado en el plano del Agrimensor Viruet. No tiene razón. El acceso al Solar A no fue creado por el Agrimensor Medina, este surge del plano de segregación del Agrimensor González. El hecho de que el plano del Agrimensor Viruet solo muestre la servidumbre no hace inexistente el acceso y el Sr. Martínez desde la presentación de la demanda solicitó al foro primario se marcara la servidumbre y se marcara el acceso del Solar A. No se cometió el error señalado.

En cuanto al quinto señalamiento de error, la Sra. Montalvo aduce que al TPI validar el plano del Agrimensor Medina se redujo la cabida de su propiedad pues se amplió y desvió la servidumbre

según establecida por el Agrimensor Viruet, a pesar de que las partes acordaron que esta no se alteraría. No tiene razón.

El Perito Agrimensor concluyó su trabajo y preparó un plano donde demarcó la servidumbre usando como guía el plano preparado por el Agrimensor Viruet. El Perito Agrimensor demarcó por dónde discurre la servidumbre, así como el acceso y las partes estuvieron presentes. Aun más, la Sra. Montalvo expresó mediante moción estar de acuerdo con los puntos marcados de la servidumbre, por ser similares a los identificados por el Agrimensor Viruet. Conforme expuesto por la propia apelante en sus escritos informativos, esta estuvo presente tanto cuando se marcaron los puntos del acceso como cuando se marcaron los puntos de la servidumbre.

En su último señalamiento de error, la Sra. Montalvo alega que el foro apelado incidió al no resolver que la servidumbre de paso no puede ser utilizada como estacionamiento. Esta arguye que no es medular si el estacionamiento de camiones del Sr. Martínez en la servidumbre de paso le afecta o no a la apelante; sino que la servidumbre constituida es de paso por lo que esta no fue creada para utilizarse como estacionamiento por parte del Sr. Martínez. No le asiste la razón.

El hecho de que el Sr. Martínez se estableciera una servidumbre de paso sobre el predio del Solar A, el cual es, a su vez, el acceso del Sr. Martínez a la carretera municipal 497, en forma alguna significa que este renunció o no tiene derecho de propiedad sobre el predio gravado. Conforme el Código Civil, y según resuelto en la sentencia apelada, la servidumbre debe ejercerse del modo más adecuado a fin de obtener utilidad para el titular dominante (Sra. Montalvo) y, a su vez, del modo menos incómodo y lesivo para el titular sirviente (Sr. Martínez). Conforme expusimos anteriormente, el hecho de que el Sr. Martínez estacione los

camiones en la servidumbre demarcada no constituye por sí un menoscabo de esta, siempre y cuando al estacionarlos no obstruya el paso e interfiera con la utilidad de la servidumbre y la Sra. Montalvo pueda hacer uso de esta.

**IV.**

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones