Víctor López Amaral, demandante y recurrido, *v.* Arturo Márquez Villafañe, demandado y recurrente.

*Número:* R-72-275      *Resuelto:* 10 de mayo de 1974

*César Rivera Pastrana,* abogado del recurrente; *Delgado & Ortiz,* abogados del recurrido.

El Juez Asociado Señor Cadilla Ginorio emitió la opinión del Tribunal.

En el caso civil número CS-58-1230, Ex-parte, Juan Márquez Villafañe, sobre Partición Judicial, ante el Tribunal Superior de Puerto Rico, Sala de Humacao, se dictó Resolución *nunc pro tunc,* aprobando un Proyecto de Partición. Dos de los coherederos, los hermanos Juan y Arturo Márquez Villafañe, representados por sus respectivos abogados, comparecieron posteriormente en dicho caso, radicando un escrito titulado "ESTIPULACIÓN", en el cual informaron al tribunal que habían surgido desavenencias entre dichos coherederos Márquez Villafañe sobre la creación de las servidumbres de paso establecidas en virtud de la referida Resolución del tribunal. Expresan en dicha estipulación que los abogados suscribientes de la misma, en una vista celebrada *y después de con-*

*ferenciar con sus clientes,* (¹) manifestaron al tribunal ·que después de realizar un estudio e inspección ocular le someterían una estipulación; y, al efecto, le sometían ·la estipulación por escrito, que contiene las siguientes cláusulas:

"1. Se reconoce como final y firme la determinación ·del Tribunal sobre la localización, extensión de la servidumbre.

2. Se establece que el coheredero Juan Márquez Villafañe, ¡podrá cercar su parcela y ·proveer puerta o portón donde vierte la servidumbre de paso, la cual puerta o portón deberá permanecer cerrada a menos que no esté en uso.

3. El coheredero Arturo Márquez Villafañe podrá si lo prefiere cercar el paso para así dilimitarlo [*sic*] o podrá proveer puerta o portón donde entra el camino a su finca disponiéndose que no podrá en modo alguno obstruir el libre ·paso por el camino.

4. El coheredero Juan Márquez Villafañe conciente [*sic*] ·a que Arturo Márquez Villafañe se provea de agua ·de su ·finca y para tal fin cercará ·de tal modo en que permita el paso de peatones y evite el cruce de ganados proveyendo para tal caso un "ataja vaca".

5. Se entenderá que se crea una mención de derecho a favor de Arturo Márquez Villafañe—de saca de agua y su ——— [*sic*] el paso de su finca al ojo de agua o manantial."

Solicitaron que el tribunal le impartiera su aprobación a dicha estipulación y advirtiera del alcance de la misma a los coherederos en cuestión. El tribunal aprobó dicha estipulación el 29 de marzo de 1962.

El predio perteneciente al coheredero Juan Márquez Villafañe radica en el barrio Montones de Las Piedras, Puerto Rico, compuesto de 8.59086 cuerdas; y colinda por el oeste con el coheredero Arturo Márquez Villafañe; y es el *predio dominante,* en relación con la servidumbre de paso establecida sobre la finca colindante de su hermano Arturo Márquez Villafañe, que es el *predio sirviente.*

---

(¹) Bastardillas nuestras.

El demandante en el presente pleito, Víctor López Amaral, adquirió por compra a dicho Juan Márquez Villafañe, la descrita finca de su propiedad, predio dominante, cuyo acceso es a través del camino o servidumbre de paso establecido sobre la finca del demandado Arturo Márquez Villafañe, que es el predio sirviente.

Luego de pasados dos meses de haber el demandante adquirido su finca, éste radicó una demanda de *Injunction* y Daños y Perjuicios contra el dueño del predio sirviente, en la cual alegaba que este último estaba violando los derechos de paso del demandante, al cercar la entrada y la salida de la servidumbre, con unos alambres de púa.

El tribunal de instancia dictó un auto de *injunction* permanente contra el demandado para que se abstenga de interferir con el uso de la servidumbre y para que eliminara un portón que había instalado a la entrada de la misma. Además le condenó al pago de $400 por honorarios de abogado. Posteriormente el demandado radicó una Moción de Reconsideración, la cual fue declarada sin lugar, mediante una Resolución, que en parte lee así:

"De la resolución dictada por el Tribunal en el caso CS-58-1230 no surge el derecho del demandado a establecer un portón a la entrada de la servidumbre. Es mediante una estipulación radicada el 28 de marzo de 1962 que los abogados de las partes en dicho pleito aluden al establecimiento de dicho portón y solicitan del Tribunal la aprobación de la estipulación *'advirtiendo del alcance de la misma a los coherederos en cuestión.'* (Énfasis nuestro.) El Tribunal se limitó a aprobar la estipulación. No surge de los autos de dicho caso que se cumpliera con la advertencia que solicitaban los estipulantes. Siendo ello así lo más lógico es asumir que el anterior en título al demandante, Juan Márquez Villafañe, nunca advino en conocimiento de la restricción a la servidumbre constituída a favor de su propiedad. Y así lo hizo constar afirmativamente en la silla testifical.

Independientemente de lo anterior, de la prueba surge que el demandante no tenía conocimiento de que se pudiera establecer un portón a la entrada de la servidumbre.

A la fecha de la compra no existía portón alguno. Necesario es concluir que el demandante es un tercero y no está atado por la estipulación antes referida.

El demandado tenía conocimiento de que existía una servidumbre sobre su propiedad. Al obstaculizarla actuó con temeridad. Procede que se le condene en honorarios de abogado. *San Patricio Corp.* v. *Colón,* 65 D.P.R. 920."

Dicha estipulación fue firmada por los abogados de Juan y Arturo Márquez Villafañe, por lo que no entendemos la conclusión del tribunal de instancia en la Resolución de la Moción de Reconsideración en el sentido de que Juan nunca se enteró del contenido de dicha estipulación. Cuando se le preguntó si había consentido a que se pusieran portones, dijo "como yo no tenía cosas allí, lo que tenía era finca, pues dejé la cosa así". (2)

Mientras Don Juan utilizó la servidumbre, a la entrada de la misma, su hermano ponía dos pelos de alambre, que él abría mientras trabajaba la finca y al salir de ella cerraba con los mismos. Cuando el demandante adquirió la finca el demandado tenía los dos alambres puestos. Luego los quitó y puso un portón. (3) Declaró el demandante que "cuando voy a pasar por allí hay vacas acostadas en el mismo camino. Hay veces que hay cabros amarraos [*sic*] allí también, lo cual cuando yo llego ahí me tengo que apear a echar los animales para el lado para entonces poder pasar y entrar en mi finca." Declaró además que los trabajadores no querían ir cuando estaban los alambres y que en una ocasión se le opusieron en el camino para que no entrara y que él quería esa entrada limpia. El demandado declaró que los alambres primero y el portón luego, se pusieron para evitar que le entraran reses a la finca y le estropearan la caña o el tabaco.

---

(2) Véase T.E. pág. 6.

(3) El demandante declaró: "Primero tenía dos alambres. Después que vinimos a la Corte quitaron los alambres y pusieron un portón. Ahora, últimamente, quitaron el portón." T.E. pág. 9.

Que dicho portón se cerraba por medio de dos aldabas, o sea, que no había candado u otra cosa y por lo tanto el portón se abría con toda facilidad.

Se reduce la controversia en el presente caso a resolver si el demandado con su actuación violó la regla prescrita por el Art. 481 del Código Civil (31 L.P.R.A. sec. 1673), que en su parte pertinente, lee así:

"El dueño del predio sirviente no podrá menoscabar de modo alguno el uso de la servidumbre constituida."

En cuanto a las obligaciones del propietario del predio sirviente, nos dice Manresa en sus *Comentarios al Código Civil Español*, Tomo IV, Edición 1972, a la pág. 793:

"El propietario del predio sirviente ha de respetar la servidumbre establecida, y como consecuencia de esta regla general, ha de permitir su ejercicio, dejando hacer al dueño del predio dominante, y haciendo él aquello a que estuviere obligado o absteniéndose de hacer lo que sería lícito sin la servidumbre. No debe hacer tampoco cosa alguna que tienda a disminuir o perjudicar el uso de la servidumbre o a hacerla más incómoda. No podrá, por lo tanto, cultivar la parte de finca sobre que existe la servidumbre de pastos, ni, en general, variar el lugar o forma de la servidumbre, salvo en el caso especial del segundo párrafo del artículo 545, en el que le conviene ponerse de acuerdo con el dueño del predio dominante."

A esos efectos en su obra, *Compendio de Derecho Civil Español*, Tomo II, a la pág. 540, Federico Puig Peña nos dice:

"Abstenerse de menoscabar en modo alguno el uso de la servidumbre constituida. La principal obligación que tiene el dueño del predio sirviente es abstenerse de menoscabar en modo alguno el uso de la servidumbre constituida (art. 545). Esta obligación es puramente pasiva, y, por consiguiente, consiste en mantener una conducta de omisión, no haciendo lo que la servidumbre tiene por fin impedir (como en la non edificandi, non altius tollendi, etc.) o permitiendo, sin poner ninguna traba, al propietario del predio dominante realizar actos constitutivos de la servidumbre, como sucede, por ejemplo, en materia de servidumbre de pasto, de saca de aguas, etc.

La expresión menoscabo que emplea el Código significa, no sólo realizar la acción decididamente contraria—como, por ejemplo, oponerse resueltamente al uso de una servidumbre positiva —sino también dificultar el ejercicio, como sería, por ejemplo, si se cultivara la faja de terreno de una servidumbre de paso o si se plantaran árboles que dificultaran la circulación del ganado, en una servidumbre de paso."

Como veremos menoscabar el uso de una servidumbre de paso significa obstruir el paso o impedirlo como expresan los ejemplos ofrecidos anteriormente por Federico Puig Peña. En el caso ante nos, el demandado ejerciendo su derecho de propiedad y para evitar que el ganado destruyera su siembra instaló un portón de madera que, con una aldaba fácil de abrir, se mantiene cerrado. Según pudimos observar por la fotografía ofrecida en evidencia, se trataba de un portón amplísimo por el que con suma facilidad podía pasar un camión pesado. No podemos obligar al demandado que por razón de una servidumbre de paso tenga que tener la entrada o salida de su terreno completamente abierta siempre, sin que pueda proteger su siembra y su propiedad por medio de un portón fácil de abrir. Sabido es que hoy día existen portones a la entrada de casi todas las fincas rústicas o urbanas, siendo ello en beneficio de sus propietarios. (4) Por lo que dicho portón en vez de impedir el disfrute de su propiedad al demandante, se la asegura.

Criterio similar al nuestro expresa Casals Colldecarrera en el *Derecho Real de Servidumbre*, ed. 1941, donde a la pág. 109, expresa:

(4) José Puig Brutau en *Fundamentos de Derecho Civil*, Tomo III, Vol. II, Segunda Edición, a la pág. 405 nos dice: "Observando en todo caso la obligación que le impone el primer párrafo de este art. 545, bastará que no se cause perjuicio al propietario del predio dominante y que exista beneficio para el del sirviente, para que la servidumbre pueda variarse a iniciativa del segundo. Oponerse a ello, cuando a nadie se perjudica y a alguien se beneficia, sería contrario a la buena fe."

"El propietario del predio dominante no adquiere por la indemnización la propiedad del paso, sino solamente el derecho de servidumbre, que no implica expropiación, sino limitación de la propiedad. En virtud de esto, el dueño del predio sirviente puede seguir utilizando éste como mejor le convenga, a condición siempre de no obstaculizar el paso, y en caso de que impidiera el ejercicio de la servidumbre, tiene el dominante acción para pedir la libertad de su vía. ¿Quiere decir esto, sigue Manresa, que la existencia de servidumbre de paso a través de una finca es obstáculo para que el dueño de ésta pueda cercar o cerar [sic] convenientemente su fundo? Evidentemente que no, puesto que cerrar un fundo es un acto de libre dominio, y el dueño del predio sirviente puede hacerlo libremente, dejando a salvo la servidumbre mediante puertas o cierres que no impidan el ejercicio de la misma."

No es necesario resolver si de la estipulación que originó la servidumbre surgía o no el derecho del demandado a poner el portón, ya que resolvemos que sí puede poner el portón. Lo que no puede hacer el dueño del predio sirviente es prohibir o impedir que el demandante haga uso del camino para llegar a su finca, como declaró él que se le impidió en una ocasión. No encontramos base en la prueba para la conclusión del tribunal de que existieran "intervenciones orales cuando el demandante usaba la servidumbre de paso o se encontraban con el demandado o alguno de sus familiares." El testimonio del demandante fue en el sentido de que "fuí una vez a entrar allí también y no me dejaron entrar." ([5]) En cuanto a este tipo de actuación, sí procedía el *injunction*.

Por los motivos expuestos se *modificará la sentencia del tribunal de instancia dejando sin efecto aquella parte que ordena la eliminación del portón instalado a la entrada de la servidumbre; así como la condena en honorarios de abogado; por considerar que no ha habido temeridad de parte del demandado al defenderse; y así modificada, se confirmará.*

---

([5]) T.E. pág. 10.