Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Héctor R. Zayas Padilla, Francisca Padilla Rosario, Víctor R. Zayas Padilla, Natividad de Jesús Zayas Padilla, Víctor R. Zayas Padilla, Sixto M. Zayas Padilla, Carmen J. Zayas Ortiz, José O. Zayas Ortiz<br><br>Apelados<br><br>vs.<br><br>David Matos Mercado, Aida L. Santos Cotto y la Sociedad Legal de Gananciales<br><br>Apelantes | KLAN202400884 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de Comerío<br><br>Civil Núm.: B3CI201700262<br><br>Sobre:<br><br>Deslinde y Amojonamiento |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 05 de diciembre de 2024.

Comparece ante nos, el señor David Matos Mercado, la señora Aida L. Santos Cotto y la Sociedad de Gananciales compuesta por éstos (matrimonio Matos-Santos o apelantes), quienes presentan recurso de apelación en el que solicitan la revocación de la "Sentencia" emitida el 25 de marzo de 2024,[1] por el Tribunal de Primera Instancia, Sala Superior de Comerío. Mediante dicho dictamen, el foro primario ordenó una servidumbre de paso por el camino "Don Manuel", el cual discurre por la finca 1851, propiedad de los apelantes.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración,

---

[1] Notificada el 27 de marzo de 2024.

modificamos el dictamen mediante los fundamentos que expondremos a continuación.

**I.**

El 1 de junio de 2017, las sucesiones Zayas-Padilla y Zayas-Ortiz (en conjunto, apelados) presentaron una "Demanda" por deslinde contra el matrimonio Matos-Santos. En resumidas cuentas, alegaron ser dueños en común proindiviso de la finca 1850, ubicada en el Bo. Barrancas de Barranquitas. Adujeron que los apelantes, quienes son dueños de la finca 1851, obstruyeron el paso del camino "Don Manuel", el cual provee acceso hasta la finca 1850. Por entender que dicha finca está enclavada, reclamaron tener derecho a una servidumbre de paso por el referido camino, tramo que discurre desde la carretera pública, cruzando por la finca 1851, hasta la finca 1850.

El matrimonio Matos-Santos presentó su "Contestación a Demanda" el 10 de agosto de 2017, y negó varias alegaciones contenidas en la reclamación. En lo que nos concierne, rechazó que la finca 1850 estuviese enclavada, debido a que existen otros accesos a ella. Además, afirmó que los apelados lo que pretenden es obtener un derecho de servidumbre que es improcedente.

Tras varias incidencias procesales impertinentes al caso, se celebró juicio en su fondo. Luego de evaluada la prueba testifical y documental vertida en sala, el 25 de marzo de 2024,[2] el Tribunal de Primera Instancia emitió "Sentencia" mediante la cual efectuó las siguientes determinaciones de hecho, las cuales hacemos formar parte íntegra del presente dictamen:

> *1. Los demandantes son dueños en común proindiviso de la siguiente propiedad:*
>
> *RUSTICA: Predio de terreno sito en el Barrio Barrancas de Barranquitas, Puerto Rico, Solar: Cabida: 137,563.65 Metros Cuadrados. Linderos: NORTE, con Quebrada Pacheco; por el SUR, con Miguel Colón antes, hoy Gelito Ortiz;*

---

[2] Notificada el 27 de marzo de 2024.

*por el ESTE, con la finca principal antes, hoy con Ángel Ortiz; y por el OESTE, con la Sucesión Matos Rodríguez antes, hoy con Libardo Ríos.*

*Consta inscrita al folio 106, del tomo 34 de Barranquitas, como la finca 1850, Sección del Registro de la Propiedad de Barranquitas. Es segregación de la finca número 62, inscrita al folio 27 del tomo 2 de Barranquitas.*

*2. La parte demandada es dueña de las siguientes propiedades:*

*Finca Número 1851*
*RUSTICA: Barrio Barrancas de Barranquitas. Cabida de 16,586.42 Metros Cuadrados. Linderos: NORTE, con Alberto Luis Vega Ortiz, Roland W. Maynulet y Rubén Fernández Vázquez. SUR, con Luis Rodríguez. ESTE, con Ángel Rodríguez. OESTE, con Margarito Zayas Rodríguez. La porción descrita es el remanente de la finca luego de las segregaciones efectuadas. Es segregación de la finca número 62, inscrita al folio 27 del tomo 2 de Barranquitas.*

*Finca Número 6503*
*RUSTICA: Barrio Barrancas de Barranquitas. Solar: Cabida: 7,867.49 Metros Cuadrados. Linderos: NORTE, con Luis Vega. SUR, con el remanente de la finca principal de la cual se segrega. ESTE, con el predio dedicado a uso público que lo separa de un camino municipal. OESTE, con José Margarito Zayas. Enclava estructura dedicada a vivienda. Es segregación de la finca número 1851, inscrita al folio 180 vuelto del tomo 53 de Barranquitas.*

*3. La finca 1850 se accede a través del camino denominado "Don Manuel", el cual transcurre desde la vía pública, a través de la finca 1851 de la parte demandada, hasta la finca 1850.*

*4. Este camino consta pavimentado desde aproximadamente el 1995, y discurre hasta varios metros después de la residencia del demandado.*

*5. Según el testimonio del Ingeniero Rafael Zayas, quien fungió como Director de Obras Públicas del Municipio de Barranquitas y quien estuvo a cargo del proyecto de pavimentación de varios caminos municipales, entre ellos el camino Don Manuel, la pavimentación de dicho camino no se realizó hasta la colindancia de la finca 1850 por instrucciones del entonces alcalde de Barranquitas, José Zayas Green, porque era hermano del dueño de la mencionada finca, José Margarito Zayas; por lo cual, según expresó el Ingeniero Zayas, el alcalde quería evitar cualquier apariencia de conflicto o favoritismo con su hermano.*

*6. Existe constancia por los documentos presentados, incluyendo un plano de la Administración de Reglamentos y Permisos (ARPE) del 29 de septiembre de 1976 y fotos satelitales del U.S. Geological Survey del 1994, que dicho acceso a través del camino Don*

*Manuel hasta la finca 1850 de la parte Demandante existe, como mínimo, desde el 1976.*

*7. Durante el año 2004 la parte demandada, David Matos, compró las fincas 1851 y 6503, sin gravámenes, según surge de las Certificaciones de Propiedad Inmueble.*

*8. Posteriormente en el año 2006, la parte demandada cerró el acceso, mediante la instalación de un portón, del camino que se extiende desde el camino don Manuel hasta la finca 1850. Así las cosas, la parte demandante no ha tenido acceso por dicho camino a la finca 1850 desde entonces.*

*9. Además del camino Don Manuel, la finca 1850 fue accedida esporádicamente mediante dos (2) brechas que se abrieron desde la carretera pública, una en el año 2006 y la otra en el 2016.*

*10. Una de las brechas, la creada en el año 2006, fue creada con una máquina D4 para poder acceder la finca 1850, limpiar su red de caminos internos y mensurar dicha finca, conforme a un acuerdo contractual entre la Sucesión Zayas-Ortiz y el Ingeniero Rafael Zayas.*

*11. Según la prueba testifical presentada, admitida y creída por este Tribunal, fue necesaria la creación de una brecha debido a que el camión plataforma que transportaba la maquinaria utilizada no podía acceder a la finca 1850 por el camino Don Manuel debido a su longitud, impidiendo poder hacer un viraje necesario por la ruta.*

*12. La brecha creada por el Ingeniero Zayas transcurrió desde una porción de la finca de la Sucesión de María Alejandra Rodríguez, atravesando la finca de Francisca Padilla Rosario y la de Vidalina Ortiz, hasta llegar a un extremo sur de la finca 1850.*

*13. Sin embargo, dicha brecha, aunque su huella todavía se puede percibir mediante fotos aéreas, es intransitable mediante vehículos de motor por consecuencia de la topografía del lugar, por lo que no constituye un camino que de acceso a la finca 1850.*

*14. Inclusive, la topografía de la brecha abierta por el Ingeniero Zayas hace imposible la creación de un camino transitable para vehículos de motor que no sean máquinas como la D4 utilizada.*

*15. De paso, este hecho no fue controvertido por la parte demandada toda vez que su perito, el Agrimensor William Guzmán, reconoció que no recorrió la totalidad de esa brecha y que desconoce las características topográficas de ésta.*

*16. Posteriormente, en el año 2016, un comerciante de nombre Luis Daniel Rosado, conocido como "El Chavo", alquilo la finca 1850 para siembra agrícola. Sin embargo, estando cerrado el único acceso a dicha finca por la finca del demandado, el Sr. Rosado abrió una brecha desde el camino Don Manuel, cercano a su antiguo negocio conocido como la "Hacienda del Chavo", transcurriendo por una finca de su propiedad, la finca del Sr. Luis Colón, la del Sr. Carlos Figueroa y la del demandado David Matos Mercado, hasta la finca 1850,*

*con una longitud total de aproximadamente 612.06 metros lineales, según se corroboró con el informe pericial del perito de la parte demandada, William Guzmán Morales.*

*17. Esta brecha no es apta para el tránsito vehicular común por su topografía, requiriendo de vehículos todo terreno para poder acceder la finca 1850, haciéndolo completamente intransitable cuando llueve.*

*18. De hecho, esta brecha, en su tramo inicial, según testificado por el Ingeniero Rafael Zayas y corroborado por el Agrimensor William Guzmán Morales, es sumamente empinada, lo cual impide el acceso a la finca en vehículos no especializados para todo terreno.*

*19. Además, su prolongación es mucho mayor que la del camino Don Manuel hasta la finca 1850, que pasa por la finca del demandado, según se corroboró mediante el testimonio del Agrimensor William Guzmán y el Ingeniero Rafael Zayas.*

*20. En el año 2016, la parte demandante recurrió al Tribunal Municipal de Barranquitas, Héctor Zayas Padilla vs. David Matos, Caso Núm. BBQU2O16-161, Querella al amparo de la Ley Núm. 140 de 23 de julio de 1974.*

*21. Mediante Resolución del 27 de septiembre de 2016, dicho Tribunal ordenó a la parte entonces querellada y aquí demandada, el Sr. David Matos, permitir "el acceso a la finca del querellante por la servidumbre por signo aparente preexistente, toda vez que la finca del querellante se encuentra enclavada y posee la mencionada servidumbre de paso..."*

*22. Al presente, la parte Demandada no ha provisto acceso a la finca 1850, posterior al término de seis (6) meses que duró la Orden mediante la Resolución del 27 de septiembre de 2016.*

Tras un análisis de los hechos que preceden y del derecho aplicable, el foro primario determinó que, aunque los apelados no pudieron establecer la existencia de una servidumbre de paso por signo aparente o por tiempo inmemorial, la finca 1850 se encuentra enclavada. En ese sentido, declaró Con Lugar la "Demanda" presentada por los apelados, y ordenó una servidumbre de paso por el camino "Don Manuel", según fue observado por el propio Tribunal en la vista ocular efectuada el 13 de julio de 2022. Concluyó que este camino, el cual cruza por la finca 1851, es el menos perjudicial para el predio sirviente y el tramo de menor distancia del predio dominante a la vía pública. Por esta razón, ordenó a los apelantes a remover el portón y

cualquier otra barrera que impida el acceso de los apelados por el mencionado camino.

Inconforme, el 11 de abril de 2024, el matrimonio Matos-Santos presentó una "Moción de Reconsideración y Determinación de Hechos Adicionales" y, en apretada síntesis, esgrimió que: (1) la "Demanda" no contiene alegación alguna a los efectos de que la finca 1850 está enclavada, por lo que se le violentó su debido proceso de ley; (2) por razones de lluvia, el Tribunal no tuvo la oportunidad de inspeccionar todos los accesos en la vista ocular celebrada; y (3) la finca 1850 no está enclavada y la prueba para sustentar dicha determinación es una generalizada que carece de elementos científicos.

Evaluada su petición, el 6 de agosto de 2024,[3] el foro *a quo* emitió una "Resolución" y declaró No Ha Lugar la "Moción de Reconsideración y Determinación de Hechos Adicionales" solicitada por los apelantes.  Razonó que: (1) las alegaciones se enmendaron por la prueba, específicamente, por el informe de conferencia con antelación al juicio, donde los apelados alegaron que la finca estaba enclavada; (2) en la vista celebrada el 8 de junio de 2023, los apelados solicitaron otra vista ocular, pero los apelantes se opusieron porque esta no era necesaria ya que el tribunal observó todos los accesos; y (3) el tribunal aquilató toda la evidencia, incluyendo el testimonio de los peritos, y le otorgó crédito al ingeniero Zayas, perito de los apelados.

Aún insatisfecho, el matrimonio Matos-Santos recurre ante esta segunda instancia judicial, y señala la comisión de los siguientes errores, a saber:

> 1. *El TPI incurrió en error manifiesto al ordenar, con prueba insuficiente y desacreditada, en violación del debido proceso e ley sustantivo y procesal, el paso por la finca 1851, a pesar que los apelados no probaron: (i) que la finca 1850 estuviera enclavada;*

---

[3] Notificada el 30 de agosto de 2024.

*(ii) la impracticabilidad y costo, del camino de los apelantes incluyendo costo comparado, de habilitar el paso a través de la propiedad de los Zayas; (iii) cuál era la necesidad actual y real de la finca 1950; (iv) no delimitar la propiedad a ser incautada y delegar en contra del derecho establecido dicha determinación a una agencia gubernamental; (v) conceder una servidumbre sin indemnización previa (vi) sin determinar o ponderar, con base en la prueba en autos cual es el [sic] el menor perjuicio a la finca 1851 de permitir que los Zayas incauten su propiedad.*

2. *El TPI incurrió en error manifiesto, al no dirimir el valor probatorio del testimonio del Ing. Zayas de conformidad con la Regla 702 de Evid. y al (i) excluir prueba de impugnación dirigida a establecer que el testimonio del Ing. Zayas de que trabajó en el camino Don Manuel en 1995 era falso e increíble toda vez que el Municipio certificó que los trabajos en el camino Don Manuel habían terminado en 1992, bajo el fundamento de esa certificación era prueba sustantiva que tenía que haber sido anunciada; (ii) al no considerar o dar valor al Ex B preparado por el Ing. Zayas, coetáneo a los hechos del 2006 sobre lo que basa su testimonio, y del que surge que a tenor con la encomienda que le dio su tía, preparó un plano en donde aparece adjudicándose el predio de terreno D justo en la entrada del camino que pretende incautar su familia convirtiéndolo en una persona con interés propietario en la controversia, (iii) Al abstraerse de la Resolución de la querella del 2006 e incluir y adoptar como hechos probados una Resolución Bajo la Ley 140 a pesar de haber sido debidamente objetada y ser contraria a su propia determinación.*

3. *El TPI incurrió en error manifiesto, al realizar conclusiones, alegadamente, basadas en la inspección ocular que no tienen base alguna en el acta de la inspección levantada por el Tribunal violando el debido proceso de ley de Matos de conocer los hallazgos y conclusiones del TPI en dicha inspección y poder refutarla.*

4. *El TPI incurrió en una pléyade de errores durante el juicio cuyo efecto acumulativo constituye una privación del debido proceso de ley que por disposición constitucional debe proteger a todo ciudadano.*

5. *El TPI incurrió en error manifiesto, al apreciar la suficiencia de la prueba, adjudicar credibilidad y determinar los hechos y descartar el testimonio del Agr. Guzmán y la Ing. Matos que establecen que la finca 1850 no está enclavada.*

Por no haber comparecido los apelados mediante la presentación de su alegato en oposición dentro del término dispuesto en ley para ello, procedemos a dar por perfeccionado el recurso y a resolverlo sin su comparecencia.

**II.**

**-A-**

El Art. 465 del Código Civil de Puerto Rico, 31 LPRA sec. 1631,[4] define el derecho real de servidumbre como aquel gravamen impuesto sobre un inmueble (predio sirviente), en beneficio de otro perteneciente a dueño distinto (predio dominante).

Las servidumbres pueden clasificarse de distintas maneras. Por razón de su origen, las hay: (1) voluntarias, y (2) legales o forzosas. Véase, Art. 472 del Código Civil de Puerto Rico, 31 LPRA sec. 1638.[5] Se llaman forzosas porque las impone alguna ley o reglamento. *Soc. de Gananciales v. Mun. de Aguada*, 144 DPR 114, 123 (1997). Dicho esto, el Art. 500 del Código Civil de Puerto Rico, 31 LPRA sec. 1731,[6] establece la servidumbre forzosa al disponer que, "[e]l propietario de una finca o heredad enclavada entre otras ajenas y sin salida a camino público, tiene derecho a exigir paso por las heredades vecinas". No obstante, debido a que la concesión de este derecho representa una limitación al derecho de propiedad del dueño del predio sirviente, este último tiene derecho a ser indemnizado. *Íd.* A esos efectos, el propio Art. 500 del Código Civil de Puerto Rico, *supra*, dispone lo siguiente:

> *Si esta servidumbre se constituye de manera que pueda ser continuo su uso para todas las necesidades del predio dominante, estableciendo una vía permanente, la indemnización consistirá en el valor del terreno que se ocupe y en el importe de los perjuicios que se causen en el predio sirviente.*
>
> *Cuando se limite al paso necesario para el cultivo de la finca enclavada entre otras y para la extracción de sus cosechas a través del predio sirviente, sin vía*

---

[4] Equivalente al Art. 935 de la Ley Núm. 55-2020.
[5] Equivalente al Art. 938 de la Ley Núm. 55-2020.
[6] Equivalente al Art. 955 de la Ley Núm. 55-2020.

*permanente, la indemnización consistirá en el abono del perjuicio que ocasione este gravamen.*

Es importante recalcar que, el propietario del predio dominante no adquiere, por la indemnización, la propiedad del paso, sino solamente el derecho de servidumbre sobre éste. Por consiguiente, el dueño del predio sirviente puede continuar utilizándolo como mejor le convenga, siempre y cuando no obstaculice el paso. *López Amaral v. Márquez*, 102 DPR 239, 245 (1974).

Finalmente, al ordenar la servidumbre de paso el Tribunal debe examinar los siguientes criterios: (1) el paso debe darse por el punto menos perjudicial al predio sirviente, (2) el paso debe darse por la menor distancia entre el predio dominante y el camino público, y (3) la anchura de la servidumbre de paso será la que baste a las necesidades del predio dominante. Véase, Arts. 501 y 502 del Código Civil de Puerto Rico, 31 LPRA secs. 1732 y 1733.[7]

**-B-**

Las Reglas de Evidencia regulan lo concerniente a la admisión o exclusión errónea de evidencia. En lo pertinente, la Regla 104 de Evidencia, 32 LPRA Ap. VI, R. 104, dispone que, si el Tribunal de Primera Instancia erró al admitir evidencia, la parte afectada deberá objetar de forma oportuna, específica y correcta. Ahora bien, cuando el foro primario comete el error, no de admitir, sino de excluir la prueba presentada, la parte perjudicada puede hacer una oferta de prueba. *Íd.* De esta oferta deberá surgir claramente cuál es la evidencia que ha sido excluida. *Íd.* Además, salvo que resulte evidente del contexto del ofrecimiento, deberá invocarse el fundamento por el cual dicha evidencia es admisible, el propósito y la pertinencia para la cual se ofrece. *Íd.* De permitir la oferta de prueba, el Tribunal determinará la forma en que

---

[7] Equivalentes a los Arts. 960 y 955 de la Ley Núm. 55-2020, respectivamente.

deberá efectuarse, ya sea mediante un resumen de la evidencia ofrecida o interrogatorio. *Íd.* Por el contrario, si el Tribunal dicta una resolución excluyendo la prueba, la parte afectada no tiene que renovar su objeción u oferta de prueba para plantear el asunto en apelación. *Íd.* En ambos casos, el Tribunal podrá realizar manifestaciones en cuanto al carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión. *Íd.*

Asumiendo que el Tribunal haya errado al admitir o excluir la evidencia, la Regla 105 de Evidencia, 32 LPRA Ap. VI, R. 105, establece que, como norma general, "[n]o se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna". A modo de excepción, la determinación será revocable cuando se cumplan los siguientes criterios, a saber: (1) la parte perjudicada hubiere satisfecho los requisitos de objeción u oferta de prueba, y (2) la evidencia admitida o excluida sea un factor decisivo o sustancial en la decisión cuya revocación se solicita. *Íd.*

De igual manera, la Regla 106 de Evidencia, 32 LPRA Ap. VI, R. 106, dispone que, aun cuando la parte perjudicada no haya objetado adecuadamente o hecho una oferta de prueba, el tribunal apelativo podrá revocar la sentencia si: (1) el error fue craso y no hay duda de que fue cometido, (2) el error fue un factor decisivo o sustancial en la decisión cuya revocación se solicita, y (3) el no corregirlo constituye un fracaso de la justicia.

Por ende, la parte que solicita se deje sin efecto la determinación de admisión o exclusión errónea de evidencia deberá colocar al tribunal apelativo en condición de establecer que el error se cometió y que, además, se trata de un error sustancial que acarrea la revocación. Precisamente, este es el propósito de ofrecer la prueba y que sea marcada para identificación como

evidencia ofrecida y no admitida. De este modo, si la parte perjudicada solicita que se deje sin efecto una exclusión errónea de evidencia, pero no hace la oferta de prueba, entonces renuncia a su planteamiento y no podrá levantar el error en apelación. *Pueblo v. Rivero, Lugo y Almodóvar*, 121 DPR 454, 476 (1988).

**-C-**

Cuando la parte apelante señala algún error relacionado con la apreciación de la prueba o con la suficiencia de ésta, deberá presentar alguno de los mecanismos de reproducción de la prueba oral establecidos en la Regla 29 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 29, la cual dispone que:

> *(A) Cuando la parte apelante o peticionaria estime que para resolver una apelación o un recurso de certiorari es necesario que el Tribunal de Apelaciones considere alguna porción de la prueba oral presentada ante el Tribunal de Primera Instancia, someterá, en conformidad con los requerimientos que más adelante se exponen, uno de los documentos siguientes o una combinación de ellos:*
>
> > *(1) transcripción*
> > *(2) exposición estipulada*
> > *(3) exposición narrativa*
>
> *(B) La parte apelante o peticionaria deberá, en el término de diez días de la presentación de la Apelación, acreditar que el método de reproducción de la prueba oral que utilizará es el que propicie la más rápida dilucidación del caso, pudiendo el tribunal determinar el método que alcance esos propósitos.*
>
> *(C) Transcripción, exposición estipulada, exposición narrativa de la prueba*
>
> *La reproducción de la prueba oral mediante transcripción se hará conforme las disposiciones de la Regla 76 y cuando fuere mediante exposición estipulada o exposición narrativa, conforme las disposiciones de la Regla 76.1.*

Por su parte, la Regla 76 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 76, establece que, cuando una parte se propone reproducir la prueba oral mediante transcripción, debe cumplir el siguiente procedimiento:

> *(A) Transcripción de la prueba oral en recursos de apelación y de certiorari*

*Una parte en una apelación o en un recurso de certiorari ante el Tribunal de Apelaciones notificará al Tribunal de Apelaciones no más tarde de diez días desde que se presentó el escrito de apelación o se notificó la expedición del auto solicitado, que se propone transcribir la prueba oral. En esa moción, la parte proponente expresará las razones por las cuales considera que la transcripción es indispensable y que propicia mayor celeridad en los procesos que la presentación de una exposición estipulada o una exposición narrativa. En todo caso, la parte proponente identificará en la moción las porciones pertinentes del récord ante el Tribunal de Primera Instancia cuya transcripción interesa, incluyendo la fecha del testimonio y los nombres de los testigos.*

*(B) Transcripción por transcriptor privado autorizado o transcriptora privada autorizada*

*Autorizada la transcripción, su proponente podrá solicitar al Tribunal de Primera Instancia la regrabación de los procedimientos. La moción a esos efectos será presentada dentro de los diez días siguientes a la notificación de la orden del Tribunal de Apelaciones. Con la moción, su proponente acompañará los aranceles correspondientes.*

*Concluida la regrabación, el Secretario o Secretaria del Tribunal de Primera Instancia la entregará a la parte proponente y notificará de ello a las demás partes y al Tribunal de Apelaciones.*

*La transcripción de la prueba oral será realizada por la parte que la solicite, a su costo y dentro del plazo de treinta días a partir de la entrega de la regrabación. Para ello, deberá utilizar un transcriptor privado autorizado o una transcriptora privada autorizada por las reglas que apruebe el Tribunal Supremo de Puerto Rico.*

*[…]*

*(C) Transcripción estipulada*

*Previa autorización del tribunal, el proponente podrá utilizar la grabación realizada con su propia grabadora o la regrabación de los procedimientos y preparar una transcripción, la cual podrá presentarse como la trascripción de la prueba oral, si la parte apelada o recurrida estipula que dicha transcripción es una reproducción fiel de la prueba oral.*

*(D) Con toda transcripción se incluirá un índice en el que se indicarán los nombres y las páginas en que aparezcan las declaraciones de cada uno de los testigos. Además, la transcripción deberá estar certificada por el transcriptor o la transcriptora como una relación fiel y correcta de la regrabación transcrita.*

*(E) Las transcripciones se prepararán y presentarán en la Secretaría del Tribunal de Apelaciones dentro del plazo ordenado por éste. Será obligación de la parte proponente suministrar copias de la transcripción de la prueba oral a todas las demás partes dentro del mismo plazo. Este plazo será prorrogable sólo por justa causa y mediante una moción debidamente fundamentada.*

*(F) Cuando en cualquier escrito se haga referencia a los hechos del caso y existiese una transcripción de la prueba oral, deberá indicarse en cada lugar, entre paréntesis, la página o las páginas de la transcripción donde aparece el testimonio que establece los hechos en cuestión.*

Como puede apreciarse, la parte que se propone transcribir la prueba oral deberá notificarlo al Tribunal de Apelaciones dentro de los 10 días desde que se presenta su escrito de apelación. No tan solo eso, sino que, en su escrito, deberá expresar: (1) las razones por las cuales considera que la transcripción es indispensable, y (2) los motivos por los cuales la transcripción propicia mayor celeridad que la presentación de una exposición estipulada o una exposición narrativa. Autorizada la transcripción por este Foro, es que entonces el proponente puede solicitar la regrabación de los procesos y, posteriormente, transcribir la prueba oral utilizando un transcriptor privado.

Resulta pertinente enfatizar que, a modo de excepción, la parte apelante puede preparar y utilizar una transcripción previa autorización del tribunal. Ahora bien, es necesario que la parte apelada estipule que dicha transcripción es una reproducción fiel de la prueba oral. Finalmente, debemos resaltar el hecho de que nuestro Reglamento exige que una transcripción esté certificada por el transcriptor como una relación fiel y correcta de la regrabación transcrita.

### III.

Según reseñamos, el Tribunal de Primera Instancia resolvió que la finca 1850 está enclavada. Por lo que, en virtud del Art. 500 del Código Civil de Puerto Rico, *supra*, concedió a los apelados el derecho a pasar por el camino "Don Manuel", el cual atraviesa por la finca 1851, propiedad de los apelantes. Determinó que este camino es el menos perjudicial para el predio sirviente y, a su vez, constituye el tramo de menor distancia del predio dominante a la

vía pública.   En virtud de lo anterior, ordenó a los apelantes a remover el portón y cualquier otra barrera que impida el acceso por el mencionado camino.

En su escrito, el matrimonio Matos-Santos alega, como primer señalamiento de error, que el foro primario erró al concluir que la finca 1850 está enclavada.   A esos efectos, indica que en la "Demanda" nunca se alegó que la propiedad estuviese enclavada y que, para llegar a dicha conclusión, el Tribunal se basó en hechos que están huérfanos de apoyo en el récord.   No le asiste la razón.

Sobre este particular, coincidimos con el foro apelado en cuanto a que las alegaciones se enmendaron por la prueba.   Como es de conocimiento, la Regla 13.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.2, establece que, cuando las partes sometan a juicio cuestiones no suscitadas en las alegaciones, estas se considerarán como si se hubieran suscitado en las alegaciones.   De igual forma, nuestro Tribunal Supremo ha expresado que la conferencia con antelación al juicio ofrece a las partes una oportunidad para someter posibles enmiendas a las alegaciones antes de la vista en su fondo. *Romero v. S.L.G. Reyes*, 164 DPR 721, 730 (2005).

Lo cierto es que, del Informe de Conferencia con Antelación al Juicio preparado por las partes surge que los apelados alegaron que el matrimonio Matos-Santos "no puede obstaculizar la entrada o acceso porque la finca de los [apelados] quedaría enclavada o sin un acceso a la vía pública".[8]   De igual manera, arguyeron, en más de una ocasión, que los apelantes intentaban de obstaculizar "su único acceso" para llegar a la finca 1850.[9]   Incluso, los propios apelantes adujeron que "[l]a propiedad de los [apelados] tiene acceso por otra propiedad de éstos, por lo que no está

---

[8] Véase, "Informe sobre Conferencia con Antelación al Juicio", a la pág. 5; apéndice pág. 229.

[9] *Íd.*, a las págs. 5, 8 y 15; apéndice págs. 229, 232 y 239.

enclavada".[10]   Aunque los apelantes solicitaron enmendar dicho informe, estos no objetaron el hecho de que la finca 1850 se encuentra enclavada, sino que se limitaron a peticionar la adición de un testigo.[11]

No tan solo eso, sino que, el propio Tribunal reconoció que el perito de los apelados testificó en cuanto a si la finca 1850 efectivamente se encuentra enclavada o sin salida a camino público, y los apelantes no objetaron su testimonio.  De hecho, el propio perito del matrimonio Matos-Santos aportó su opinión pericial al respecto, hecho que reconoce el apelante en sus escritos.[12]

Ante este cuadro, concluimos que tocaba entonces a la parte apelante objetar su admisibilidad en dicha etapa y, al no hacerlo, brindó implícitamente su consentimiento para que se estimaran como enmendadas las alegaciones, a tenor con lo dispuesto en la Regla 13.2 de Procedimiento Civil, *supra*.

Por otro lado, en su tercer señalamiento de error, el matrimonio Matos-Santos aduce que el foro *a quo* erró al realizar conclusiones basadas en una inspección ocular que no tiene base alguna en el acta de inspección.  Discrepamos.

El 13 de julio de 2022, se efectuó una inspección ocular en la cual el Tribunal tuvo la oportunidad de visitar el camino "Don Manuel" y observar los accesos adicionales que, según alegan los apelantes, posee la finca 1850.  Según el propio "Acta", el Tribunal y las partes pudieron "observar el lugar o el acceso que tiene en estos momentos".[13]  Asimismo, caminaron por el camino que hizo

---

[10] *Íd.*, a la pág. 6; apéndice pág. 230.
[11] Véase, "Moción en Solicitud de Enmienda", apéndice a la pág. 217.
[12] Por ejemplo, Véase, "Moción en Reconsideración y Determinación de Hechos Adicionales", a la pág. 5; apéndice pág. 12. ("El Agrimensor William Guzmán... testificó que: La finca no está enclavada. [...] En su opinión, la finca 1850 de los [apelados] no está enclavada").
[13] Véase, "Acta" transcrita el 14 de julio de 2022, a la pág. 1; apéndice pág. 219.

"el chavo",[14] y además, el Tribunal observó el tramo por donde entró la máquina.[15] Aunque se suspendió la vista ocular por motivos de lluvia, del "Acta" se desprende que, "de todas maneras, observaron el lugar y las partes pudieron explicar el camino y por donde discurrían las fincas aledañas".[16]

Entendemos que, la información que surge del "Acta", unida a la credibilidad que el Tribunal otorgó a los testigos en juicio y el resto de la evidencia, es suficiente para llegar a la conclusión de que la finca 1850 está enclavada, y que el camino "Don Manuel" es el de menor distancia entre el predio dominante y el camino público. Tal cual surge del "Acta", el Tribunal pudo observar y caminar los accesos que se alegan posee la finca 1850, incluyendo el camino "Don Manuel". A nuestro juicio, se consignaron con claridad los detalles y circunstancias sobre el trámite y los hechos observados. Por ende, razonamos que estos son suficientes para sostener la determinación cuya revisión se solicita.

En su cuarto señalamiento de error, el matrimonio Matos-Santos sostiene que el Tribunal de Primera Instancia incurrió en un sinnúmero de errores que ameritan la revocación del dictamen apelado. Sobre este aspecto, indica que el foro judicial: (1) permitió preguntas sugestivas en el directo y prueba de referencia; (2) adjudicó credibilidad al perito de los apelados aún cuando su testimonio fue objetado por parcialidad; (3) no ordenó la entrega de ciertos documentos bajo el pretexto de que se solicitaron tardíamente; (4) excluyó prueba de impugnación; y (5) no dirimió correctamente el valor probatorio.

Cónsono con el derecho discutido en el acápite anterior, un foro apelativo, como norma general, no dejará sin efecto una determinación de admisión o exclusión errónea de evidencia, y

---

[14] *Íd.*
[15] *Íd.*, a la pág. 2; apéndice pág. 220.
[16] *Íd.*

tampoco revocará por ello sentencia alguna. Por lo que, si el error se considera no perjudicial — porque la exclusión o admisión de evidencia no hubiese producido un resultado distinto — se confirmará el dictamen apelado, a pesar del error. A su vez, la parte que solicita se deje sin efecto una determinación de admisión o exclusión errónea de evidencia, tiene que colocar al tribunal apelativo en condición de establecer que el error se cometió y que dicho error es sustancial. Para ello, resulta imprescindible traer a la atención de este Foro la naturaleza, el propósito y la pertinencia de la evidencia. Precisamente, por esta razón es que, si la parte no hace la oferta de prueba, renuncia al planteamiento y no podrá levantar el error en apelación.

En primer lugar, debemos mencionar que, tal y como discutiremos más adelante, los apelantes no presentaron ante nos una transcripción de la prueba oral o una estipulación narrativa de la prueba que cumpla con nuestro Reglamento. De este modo, estamos impedidos de determinar si, en efecto, estos presentaron o no una oferta de prueba conforme lo exige la Regla 104 de Evidencia, *supra*. Por tanto, no estamos en posición de evaluar ese aspecto.

En segundo lugar, queremos hacer constar que, según aclaró el foro apelado, tanto los folios del registro de la propiedad, así como la certificación del municipio de Barranquitas — prueba que no fue admitida en juicio — no fueron descubiertos ni anunciados en el Informe de Conferencia con Antelación al Juicio. Copia de este informe consta en el expediente apelativo y hemos podido corroborar que, en efecto, no se anunció tal evidencia. Aún así, el Tribunal aclaró que la admitió como identificación para efectos de impugnación.

Finalmente, en su segundo y quinto señalamiento de error, el matrimonio Matos-Santos cuestiona el valor probatorio y la apreciación de la prueba que hizo el foro primario.

Como se sabe, cuando la parte apelante señala algún error relacionado con la apreciación de la prueba o con la suficiencia de ésta, deberá presentar alguno de los mecanismos de reproducción de la prueba oral, de tal modo que el Tribunal de Apelaciones pueda considerarla. La Regla 29 del Reglamento del Tribunal de Apelaciones, *supra*, provee para que la parte apelante reproduzca la prueba oral mediante transcripción, la cual deberá cumplir con lo dispuesto en la Regla 76 de nuestro reglamento.

Según adelantamos, la Regla 76 del Reglamento del Tribunal de Apelaciones, *supra*, exige que la parte apelante notifique a este Foro, dentro de los 10 días desde que se presenta su recurso, que se propone transcribir la prueba oral. No tan solo eso, sino que dicho escrito deberá expresar, además, lo siguiente: (1) las razones por las cuales considera que la transcripción es indispensable, y (2) los motivos por los cuales la transcripción propicia mayor celeridad que la presentación de una exposición estipulada o una exposición narrativa. Si el Tribunal de Apelaciones autoriza la transcripción, el proponente puede solicitar la regrabación de los procesos y, posteriormente, transcribir la prueba oral utilizando un transcriptor privado.

En el presente caso, la parte apelante no informó a este Tribunal, dentro de los 10 días desde que presentó su recurso, que se proponía transcribir la prueba oral. Tampoco cumplió con exponer las razones por las cuales considera que la transcripción es indispensable, ni los motivos por los cuales la transcripción propicia mayor celeridad de los procesos.

Notamos que, como parte del apéndice, la parte apelante anejó una transcripción. No obstante, dicha transcripción no fue

estipulada por la parte apelada, y tampoco está certificada por el transcriptor como una relación fiel y correcta de la regrabación transcrita. Ante esta realidad, estamos impedidos de considerar la transcripción preparada por el matrimonio Matos-Santos. En atención a lo cual, el apelante no nos ha puesto en posición de determinar si el tribunal revisado hizo una apreciación errónea de la prueba. Para evaluar la suficiencia de ésta, era necesario que el apelante presentara alguno de los mecanismos de reproducción de la prueba oral en cumplimiento con nuestro Reglamento, lo cual no hizo en este caso.

No obstante lo anterior, los apelantes argumentan que el foro apelado no les concedió una justa compensación tras ordenar una servidumbre de paso sobre su propiedad. Sobre este aspecto, tienen razón.

Según intimamos, una servidumbre de paso representa una limitación al derecho de propiedad del dueño del predio sirviente, por lo que este último tiene derecho a ser indemnizado. De este modo, para que el propietario del predio dominante, en este caso, los apelados, puedan adquirir, por medio de la indemnización, el derecho de servidumbre sobre el camino "Don Manuel", es necesario que éstos paguen la justa compensación que disponga el Tribunal, según los parámetros del Art. 500 del Código Civil de Puerto Rico, *supra.*

Por lo tanto, el Tribunal de Primera Instancia tenía que establecer la indemnización a la cual el dueño del predio sirviente posee derecho, por virtud del Art. 500 del Código Civil de Puerto Rico, *supra.* No obstante, aun cuando el foro primario ordenó la servidumbre de paso, del dictamen apelado no surge que este haya dispuesto la justa compensación a la cual los apelantes son acreedores. Este elemento es esencial porque el propietario de la finca enclavada no adquiere el derecho a pasar por las heredades

vecinas sino hasta que paga la correspondiente indemnización. En atención a lo cual, se devuelve el caso al foro apelado para que este último determine la justa compensación que deberán recibir los apelantes, según las disposiciones del propio Art. 500 del Código Civil de Puerto Rico, *supra*. Dicho valor deberá ser satisfecho por los apelados como requisito previo a obtener el derecho de servidumbre que les fue reconocido.

## IV.

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, modificamos la "Sentencia" apelada, emitida por el Tribunal de Primera Instancia, Sala de Comerío, a los únicos efectos de que el foro primario incluya el valor de la justa compensación a la cual los apelantes son acreedores, según las disposiciones del Art. 500 del Código Civil de Puerto Rico, *supra*. Así modificada, se devuelve el caso al foro apelado para la continuación de ulteriores procedimientos consistentes con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones